# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS (MERS)
LITIGATION

JONATHAN E. ROBINSON; et. al.,
APPELLANTS

v.

AMERICAN HOME MORTGAGE
SERVICING, INC., et. al.,
APPELLEES

NO. 11-17615

D.C. NO. 2:09-MD-02119
(DISTRICT OF ARIZONA)

## OPENING BRIEF OF APPELLANTS

Robert R. Hager (NV State Bar
No. 1482)
Treva J. Hearne (NV State Bar No.
4450, CA State Bar No. 159542)
HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
Tel: (775) 329-5800
Fax: (775) 329-5819

William A. Nebeker (Az State Bar
No. 004919, CA State Bar No.
72079)
Valerie R. Edwards (Az State Bar
No. 017217)
KOELLER NEBEKER
CARLSON & HALUCK, LLP
3200 North Central Ave., Ste.
2300
Phoenix, AZ 85012
Tel: (602) 256-0000
Fax: (602) 256-2488

# TABLE OF CONTENTS

I.      JURISDICTIONAL STATEMENT ........................................................1

II.     STATEMENT OF ISSUES.................................................................1

III.    STATEMENT OF CASE....................................................................2

IV.     STATEMENT OF FACTS .................................................................4

V.      SUMMARY OF THE ARGUMENT .................................................11

VI.     ARGUMENT .................................................................................12

A.      There were Substantial Errors in the Establishment of the MDL Court's
Jurisdiction.................................................................................................12
1.      The J.P.M.L.  Erred In Transferring The Cases To The MDL Court. ........12

2.      The J.P.ML Erred When It Transferred The Actions To The Transferee Court
In The District Of Arizona Because The Majority Of Plaintiffs And Witnesses Were
In Nevada, The Nevada District Court Had More Experience With The Pretrial Issues
Of The Case, And The Arizona Court Was Incapable Of Properly Administering A
Case Of This Type. .......................................................................................21

B.      The MDL Court's Administration of the Cases was Fatally Flawed. ........24
1.      The MDL Court Improperly Re-Interpreted the J.P.M.L. Order Splitting The
Claims.24
2.      The Claims Were Not Properly Split Because the MDL Court Exceeded Its
Jurisdiction As Well As Failed To Clearly Differentiate Which Claims Had Been
Transferred.................................................................................................25
3.      The MDL Court Itself Inconsistently Transferred Claims After Re-
Interpreting The J.P.M.L. Transfer Order.................................................26

C.      The MDL Court Erred In Applying The Standards For A Rule 12(B) Motion
To Dismiss When It First Ruled On Legal Issues..............................................29
1.      The Proper Procedural Device For The Disposition Of This Matter Is A Rule
56 Motion For Summary Judgment Because The District Court, When Deciding The
Matter, Acknowledged The Lack Of Genuine Dispute Of Material Fact.................29

2.       The MDL Court Improperly Made Legal Determinations Which Impacted Its Factual Decisions. ...................................................................................30

3.       The MDL Court Improperly Made All Factual Presumptions In Favor Of Defendants To The Detriment Of Plaintiffs................................................33

D.       The MDL Court's Order Completely Misinterpreted the CAC. ...............................34
1.       The MDL Court Misconstrued The Impact Of The Factual Recitations And Ignored The Allegations Regarding Lack Of Agency. ...........................................34

1.       The MDL Court Misconstrued The Allegations Regarding Robo-Signing. ...............36

2.       The Court Misinterprets The Available Case Law.....................................37

3.       The Appellants allege that the Defendants have no authority to foreclose................39

4.       The Underlying Issue For Deeds Of Trust Transferred By MERS Is Whether There Exists Sufficient Continuity Of Agency For The Party Now Seeking To Initiate Foreclosure To Assert Standing................................................................41

5.       The MDL Court Fell Prey To Its Own Arbitrary Split Of The Claims When It Determined That It Could Not Decide If The State's Non Judicial Foreclosure Statutes Had Been Violated. ..................................................................46

D.       The MDL Court Fundamentally Misconstrued This Court's Decision in *Cervantes*. .............................................................................................47

E.       The MDL Court Erred In Dismissing the MERS-Based Aiding and Abetting Claims  49

F.       The MDL Court Erred Denying Leave To Further Amend the CAC. .......................49

**VII.       CONCLUSION**.............................................................................**51**

**VII.       STATEMENT OF RELATED CASES** ............................................**51**

**VIII.       CERTIFICATE OF COMPLIANCE**..............................................**52**

# TABLE OF AUTHORITIES

## Cases

*Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009)...48

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................29

*Asuncion v. Dist. Dir. of U. S. Immigration & Naturalization Serv.*,
427 F.2d 523 (9th Cir. 1970) ..............................................................................29

*Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787 (9th Cir. 2011).................31

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...........................28, 29, 31

*Burke* (CV 10-220-PHX-JAT).................................................................25, 26, 27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................29

*Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034 (9th Cir. 2011)passim

*Dalton, et al. v. CitiMortgage, Inc., et al.,* D. Nev. No. 3:09-0534 ....................7

*Eardley v. Greenberg*, 160 Ariz. 518, 774 P.2d 822 (1989), *vacated, in part, on
other grounds,* 160 Ariz. 261, 692 P.2d 724 (1990)...........................................40

*Erlich v. Glasner*, 374 F.2d 681 (9th Cir. 1967) ................................................29

*Fitzgerald* (CV 10-460-PHX-JAT)...............................................................25, 26

*Goodwin, et al. v. Executive Trustee Services, L.L.C., et al.,*
D. Nev. No. 3:09-306.............................................................................................2

*Grove v. Mead School Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985)...............29

*Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203
(9th Cir. 2007)......................................................................................................28

*In re 21st Century Productions Inc. "Thrilsphere" Contract Litigation*,
448 F. Supp. 271 (J.P.M.L. 1978) .......................................................................13

*In re Admission Tickets*, 302 F. Supp. 1339 (J.P.M.L. 1969)............................15

*In re Allegheny Energy, Inc., Securities Litigation*, 259 F. Supp.2d 1368
(J.P.M.L. 2003) ....................................................................................................17

*In re Ampicillin Antitrust Litigation*, 315 F. Supp. 317 (J.P.M.L. 1970) ...........21

*In re Best Buy Co. Inc., Restocking Fee Sales Practices Litigation*,
528 F. Supp.2d 1363 (J.P.M.L. 2007) .................................................................12

*In re Bextra and Celebrex Marketing, Sales Practices and Products Liability
Litigation*, 391 F. Supp.2d 1377 (J.P.M.L. 2005)..............................................22

*In re Boscov's Dept. Store, LLC, Fair and Accurate Credit Transactions ACT
(FACTA) Litigation*, 528 F. Supp.2d 1341 (J.P.M.L. 2007)...............................22

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*,
424 F. Supp. 504 (J.P.M.L. 1976) .................................................................23, 24

*In re Caesars Palace Securities Litigation*, 360 F. Supp. 366 (S.D. N.Y. 1973)16

*In re Drowning Incident at Quality Inn Ne., Washington, D. C., on May 3,
1974*,          405 F. Supp. 1304 (J.P.M.L. 1976) ...........................................18

*In re Eli Lilly & Co. Oraflex Products Liability Litigation*, 578 F. Supp. 422
(J.P.M.L. 1984) ...................................................................................................12

*In re Garrison Diversion Unit Litigation*, 458 F. Supp. 223 (J.P.M.L. 1978)...13

*In re Gordon*, 207 Ariz. 401, 87 P.3d 89 (Ariz. Ct. App. 2004) ........................40

*In re Grand Funk R. R. Trademark Litigation*, 371 F. Supp. 1084
(J.P.M.L. 1974) .......................................................................................15, 16, 17

*In re Hawkins,* 2009 WL 901766 .......................................................................42

*In re Industrial Wine Contracts Securities Litigation*, 386 F. Supp. 909
(J.P.M.L. 1975) ...................................................................................................21

*In re Magic Marker Securities Litigation,* 470 F. Supp. 862 (J.P.M.L. 1979)...13

*In re National Sec. Agency Telecommunications Records Litigation,*
474 F. Supp.2d 1355 (J.P.M.L. 2007) .................................................................17

*In re Pan American World Airways In. Maternity Leave Policies Litigation,*
414 F. Supp. 1232 (J.P.M.L. 1976) ..............................................................13, 18

iv

*In re Parmalat Securities Litigation,* 350 F. Supp.2d 1356 (J.P.M.L. 2004).....17

*In re Pharmacy Ben. Managers*, 452 F. Supp.2d 1352 (J.P.M.L. 2006)............17

*In re Photocopy Paper*, 305 F. Supp. 60 (J.P.M.L. 1969)...........................12, 15

*In re Pullen & Associates, LLC, Brokered Group Health Plans Litig.*,

366 F. Supp.2d 1383 (J.P.M.L. 2005) ....................................................14, 18, 19

*In re Raymond Lee Organization, Inc. Securities Litigation*, 446 F. Supp. 1266

(J.P.M.L. 1978) ................................................................................................13

*In re Seroquel Products Liability Litigation*, 447 F. Supp.2d 1376

(J.P.M.L. 2006) ................................................................................................22

*In re Sugar Industry Antitrust Litigation (East Coast)*, 471 F. Supp. 1089

(J.P.M.L. 1979) ................................................................................................12

*In re Travel Agent Com'n Antitrust Litigation*, 290 F. Supp.2d 1381

(J.P.M.L. 2003) ................................................................................................21

*In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351

(J.P.M.L. 2007) ..........................................................................................12, 17

*In re Vonage Initial Public Offering (IPO) Securities Litigation,*

471 F. Supp.2d 1354 (J.P.M.L. 2007) ..............................................................17

*In re Vonage Marketing and Sales Practices,* 505 F. Supp.2d 1375

(J.P.M.L. 2007) ................................................................................................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250

(J.P.M.L. 1983) ................................................................................................21

*In re Welding Rod Products Liability Litigation*, 269 F. Supp.2d 1365

(J.P.M.L. 2003) ................................................................................................26

*In re Westec Corp.*, 307 F. Supp. 559 (J.P.M.L. 1969) ...............................16, 20

*In re Western States Wholesale Natural Gas Antitrust Litigation*,

290 F. Supp.2d 1376 (J.P.M.L. 2003) ..............................................................22

*In re Wyeth Patent Infringement Litig.*, 445 F. Supp. 992 (J.P.M.L. 1978).......13

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico,
on April 20, 2010*, 731 F.Supp.2d 1352 (J.P.M.L. 2010) ..................................21

*Johnson v. Buckley*, 356 F.3d 1067 (9th Cir. 2004) ..........................................47

*Joseph Green, et al. v. Countrywide Home Loans, Inc., et al.,*
D. Nev. No. 3:09-374..........................................................................................2

*Kartman v. Ocwen LAN Servicing L.L.C.,*
Case No.: 2:09-cv-02404-GMN-PAL(2010).....................................................46

*Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394 (8th Cir. 2004) ....................35

*Krohn v. Sweetheart Properties, Ltd.,* 208 Ariz. 205, 52 P.3d 774 (2002) ........49

*Levya v. Nat'l Default Servg. Corp.,* 2011 WL 2670183 (Nev. July 7, 2011)...49

*Lopez, et al. v. Executive Trustee Service, L.L.C., et al.,* D. Nev. No. 3:09-180 .2

*Pasillas v. HSBC Bank, USA, as Trustee for Luminent Mortg. Trust,*
2011 WL 2671894 (Nev. July 7, 2011) ..............................................................41

*Patton v. First Fed. Save. & Loan Ass'n of Phoenix,* 118 Ariz. 473,
578 P.2d 152 (1978)..............................................................................................41

*Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012)..................................................48

*Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971) ..............................................12

*Residential Funding Co., L.L.C., v. Saurman,* 2011 WL 1516819
(Mich. Ct. App. 2011)...........................................................................................41

*San Tan Irrigation Dist. v. Wells Fargo Bank,* 197 Ariz. 193, 3 P.3d 1113
(Ariz. Ct. App. 2000) ............................................................................................41

*Sandefur*, (CV 10-1421-PHX-JAT).............................................................26, 27

*Skinner v. Switzer*, __ U.S. __, 131 S. Ct. 1289, 1296 (2011)...........................31

*Vargas, et al. v. Countrywide Home Loans, et al.,* D. Cal. No. 2:09-2309 .........2

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ........................31

**Statutes**

28 U.S.C. § 1291 ............................................................................1

28 U.S.C. § 1332 ..........................................................................20

28 U.S.C. § 1367 ..........................................................................20

28 U.S.C. § 1407 .....................................................................passim

28 U.S.C. § 41 .................................................................................1

A.R.S. § 33-420 ...........................................................................44

A.R.S. § 33-804 ...........................................................................40

A.R.S. § 33-820 ...........................................................................40

*In re Veal,* 450 B.R. 897 (B.A.P. 9th Cir. 2011) .........................45, 46

NRS 107.080 ...........................................................................27,37, 44

**Other Authorities**

5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) .........................................34

*Mortgage Electronic Registration Systems (MERS), its recent Legal Battles and the Chance for a Peaceful Existence,* Loyola Journal of Public Interest Law, 12 Loy.J. Publ. Int. L. 177 (Fall 2010) ....................................................47

Restatement (Third) on Property: Mortgages § 5.4c  (1997) ............................46

*The Case Against Allowing Mortgage Electronic Registration Systems, Inc. (MERS) to Initiate Foreclosure Procedings,*32 Cardozo L. Rev. 1621 (March 2011) ..................................................................47

**Rules**

Fed. R. App. P. 4 .............................................................................4

Fed. R. Civ. P. 12 .........................................................................4, 33

Fed. R. Civ. P. Rule 56 .....................................................................34

## I.   JURISDICTIONAL STATEMENT

The Ninth Circuit Court of Appeals has jurisdiction pursuant to Title 28 U.S.C. § 41 from final decisions of the District Court pursuant to 28 U.S.C. § 1291.  The Notice of Appeal was timely filed pursuant to Fed. R. App. P. 4(a)(1) on October 26, 2011.  (ER 1-109)

## II.   STATEMENT OF ISSUES

A. Whether The J.P.M.L. Erred in Transferring This and Other Cases to the Multidistrict Court.

B. Whether The Multidistrict Court Erred in Issuing an Order Re-Interpreting the J.P.M.L.'s  Order Splitting the Claims in This Case.

C. Whether the Multidistrict Court Misapplied the Standards of a Rule 12(b) Motion to Dismiss.

D. Whether the Multidistrict Court Erred in Dismissing the Case.

E. Whether the Multidistrict Court Erred in Denying Leave to Amend the Consolidated Amended Complaint.

1

## III.    STATEMENT OF CASE

Appellants Jonathan E. Robinson and Sally J. Robinson-Burke filed their original class action complaint in the United States District Court for the District of Arizona on April 21, 2009.  Appellees, along with co-defendants in related cases, requested this case, along with five others,[1] be combined using the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") established under 28 U.S.C. § 1407.  By Order dated December 7, 2009 (the "J.P.M.L. Transfer Order") the J.P.M.L. transferred to the United States District Court for the District of Arizona ("MDL Court"), all claims related to the alleged MERS "conspiracy to commit fraud" and/or claims "that security instruments are unenforceable or foreclosures are inappropriate due to MERS's presence as a party" or that otherwise concern the "formation and operation" of MERS. (CR1) The remaining claims were simultaneously remanded back to their original jurisdictions to be litigated separately.  (CR1)  The "MERS Litigation" is the focus of this appeal.

Following the J.P.M.L.'s order consolidating the six main cases, the MDL Court ordered that MERS give notice of all other cases that MERS argued should be

---

[1] The other cases were one case from the Central District of California, *Vargas, et al. v. Countrywide Home Loans, et al.,* D. Cal. No. 2:09-2309; and four cases from the District of Nevada, *Lopez, et al. v. Executive Trustee Service, L.L.C., et al.,* D. Nev. No. 3:09-180; *Goodwin, et al. v. Executive Trustee Services, L.L.C., et al.,* D. Nev. No. 3:09-306; *Joseph Green, et al. v. Countrywide Home Loans, Inc., et al.,* D. Nev. No. 3:09-374; and *Dalton, et al. v. CitiMortgage, Inc., et al.,* D. Nev. No. 3:09-0534.  (CR1 at p. 4).

2

included in the MDL. (CR 112) As to the six main cases, the MDL Court requested briefing on which claims in each of the six main cases were to be remanded to the respective transferor courts (CR 25), which occurred, and which culminated in the MDL Court's order of March 23, 2010. (CR 211) The MDL Court ordered that Defendants' responses to the claims retained by the MDL Court be filed within fifteen days of the order. (CR 211) The Defendants filed numerous motions to dismiss and joinders. (CR258-262, CR 264, CR 266-269, 276-322, 324-343, 353) Plaintiffs responded, and the motions were fully briefed as of May 28, 2010 and argued on August 24, 2010. (CR 448-452, 558;1093)

    On September 30, 2010, the MDL Court granted the motions to dismiss without prejudice, directing plaintiffs, if they chose to do so, to file a consolidated amended complaint ("CAC") with the other plaintiffs' actions that were joined into the MDL. (CR 1170 at p. 23) Plaintiffs attempted compliance by filing a CAC on December 16, 2010 (CR 1205), which was stricken by the MDL Court on the grounds that leave to amend was not granted, clarifying that the complaint should be filed as a "proposed" amended complaint. (CR 1217) Plaintiffs then filed a motion to file the Consolidated Amended Master Complaint (CR 1229-1230) and lodged a proposed Consolidated Amended Master Complaint on January 18, 2011. (CR 1234) Defendants objected, arguing the amendment was premature pending the court's ruling on the motions to dismiss the sixteen tag-along cases that were heard on

3

January 19, 2011.[2] (CR 1241)[3]  The MDL Court ruled on the motions to dismiss the tag along cases on January 25, 2011 and denied the motion to amend, directing Plaintiffs to await the outcome of other pending tag-along matters before proceeding with a new CAC.  (CR 1247, p. 18)  On May 6, 2011, the District Court ruled on additional outstanding motions to dismiss various tag-along matters and ordered that a new CAC be filed as to the six lead cases and sixty-six (66) member cases.  (CR 1413)

Plaintiffs collectively filed a CAC on June 4, 2011, which focused on the formation and operation of the MERS system. (ER 213-276) The Appellees filed multiple motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the MDL Court granted in a single order dismissing the case with prejudice on October 3, 2011 ("Order of Dismissal").  (ER 28-53)

The Appellants timely filed their Notice of Appeal on October 26, 2011 pursuant to Fed. R. App. P. 4(a)(1)(A) and subsequently amended the Notice on April 19, 2012. (ER 334-335)

## IV.    STATEMENT OF FACTS

On or about November 14, 2005, Jonathan Robinson refinanced his personal residence by executing a Promissory Note and Deed of Trust which listed WMC Mortgage

---

[2] *See* CR 1189 (listing motion document numbers and cases).

[3] *See* also CR 1242 (Response to Defendants' statement of objection), 1243 (Reply).

Corp. a California-based mortgage unit of GE Money, as the Lender, and TD Service Financial Corporation as the Trustee. The Deed of Trust listed MERS, Inc. as the purported beneficiary under the Deed of Trust. The loan was in the form of two Promissory Notes totaling $625,000.00, and each was secured by a separate Deed of Trust. The first Promissory Note was in the amount of $500,000.00 and the Second Promissory Note equaled $125,000.00. It was represented to Mr. Robinson that the loan funded 100% of the property's appraised value. Upon information and belief, the loan to be secured by the deed of trust described in this paragraph was based on stated income and/or no proof of income from Plaintiffs. (ER 474)

MERS and/or U.S. Bank National Association caused to be recorded an Assignment of Deed of Trust related to the Robinson property whereby MERS purported to assign "all beneficial interest" in the deed of trust on the Robinson property, "together with the note or notes therein described . . . the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." (ER 473) Said document was purportedly signed by Jennifer Hamlin acting as an assistant secretary for MERS, Inc. Jennifer Hamlin did not have authority to sign the document in the capacity as an "assistant secretary" for MERS, Inc. because she was not employed by MERS, Inc. and/or because she was not an officer of the MERS member on whose behalf the document was signed. (ER 228) Jennifer Hamlin is a robo-signer who

5

lacked any knowledge of any of the representations contained in the document. (ER 228, 229)

Appellant alleged that the assignment was false because MERS purported to transfer all its "beneficial interest" in the deed of trust referenced in the documents to U.S. Bank National Association, as Trustee for the Structured Asset Securities Corporation, Series 2006-GEL3 c/o ASC, when MERS, in fact, had no beneficial interest. MERS admits in its rules and by-laws that it never has any beneficial interest in any actual loan proceeds. (ER 218-219)

U.S. Bank National Association, acting as Trustee for the Structured Asset Securities Corporation, Series 2006-GEL3 by Wells Fargo Bank, N.A., as attorney in fact, based on the assignment referred to above, caused to be recorded a Substitution of Trustee dated February 15, 2008, whereby Michael A. Bosco, Jr. was substituted as trustee under the deed of trust related to the Robinson property. (ER 228) Appellant alleged that this document was false because it was made based on an invalid assignment of the deed of trust to U.S. Bank National Association, and U.S. Bank National Association did not have the requisite authority to appoint a successor trustee. (ER 228)

America's Servicing Company ("ASC") and/or Defendant Wells Fargo Bank caused to be recorded on January 18, 2009 a Notice of Substitution of Trustee dated December 3, 2008 related to the Robinson property that listed America's Servicing

Company as the beneficiary, but wherein Wells Fargo Bank, N.A., "Attorney in Fact for US Bank National Association, as Trustee for the Structured Asset Securities Corporation, Series 2006 GEL3" was referred to as "the undersigned beneficiary." (ER 229)

America's Servicing Company caused to be recorded a Notice of Trustee's Sale dated December 3, 2008 related to the Robinson property that listed America's Servicing Company as the beneficiary.  (ER 229)  America's Servicing Company caused to be recorded a Notice of Trustee's Sale dated December 30, 2008 related to the Robinson property that listed America's Servicing Company as the beneficiary.  (ER 229)

The Robinson claims related to violation of A.R.S. § 33-420 are similar to those of the other Arizona plaintiffs that were parties to the CAC.  The Robinson claims related to wrongful foreclosure related to the MERS deed of trust are also similar to the other plaintiffs listed in the main cases and the plaintiffs listed in the 66 tag-along cases, the majority of whom are Nevada residents.

Lacy J. Dalton executed a Deed of Trust and a note in the amount of $600,000.00, which listed American Home Mortgage Acceptance, Inc. as Lender for her residence located at 820 Cartright Rd., in the Virginia Highlands. The deed of trust listed MERS as the beneficiary. Upon information and belief, EMS was later substituted as servicer, at a time known to the Defendant EMS.  (ER 298, 403)  No

7

party that was named in the Deed of Trust was still involved with the loan except the borrower Lacy J. Dalton.

Timothy Burke and Dawn Burke executed a note in the amount of $318,750.00 in favor of Fremont Investment & Loan on February 23, 2004.  As security, they executed a Deed of Trust on their property located at 4695 Cavataio Circle, Reno, Nevada which named Fremont Investment & Loan as the "lender", MERS was listed as the "beneficiary" and First American was designated as the "trustee".  Upon information and belief, the loan to be secured by the deed of trust described in this paragraph was based on stated income and/or no proof of income from Plaintiff.  (ER 396)  Defendant Litton Loans refused to modify the loan to the current market value of the property even though it participated in the acts that caused the loss of value of the home.  On March 5, 2009 Quality Loan Servicing issued a Notice of Default, without indicating how it came to be entitled to such standing.  Quality Loan Servicing omitted the amount of arrearages in the Notice of Default that Plaintiffs must pay in order to have become current.  (ER 396)

Robert L. Fitzgerald entered into a loan with CTX Mortgage Company on February 9, 2005 in the amount of $650,000.00.   He executed a Note in its favor and gave a deed of trust on his property at 1180 West Peckham, Reno, Nevada, naming John L. Matthews or Timothy M. Bartosh as Trustee and MERS as the beneficiary.  Upon

8

information and belief Indymac Bank now known as OneWest Bank became the

servicer at a time known to Defendants.   (ER 569-570)

On or about January 19, 2010, Quality Loan Service Corporation, as Trustee, issued a

Trustee's Deed Upon Sale of the Fitzgerald property located at 1180 West Peckham,

Reno, Nevada to Deutsche Bank National Trust Company, as Trustee of the

Residential Asset Securitization Trust 2005-A7, Mortgage Pass-Through Certificates,

Series 2005-G under the Pooling and Servicing Agreement dated May 1, 2005

("Deutsche") following a trustee's sale where Deutsche purchased the property for

$364,711.87. (ER  414,570)  Based upon this information alone, it is clear that the

Deed of Trust was transferred to Residential Asset Securitization Trust 2005-A7,

probably within weeks of its execution.  All such securitization trusts are, by

definition, non-MERS members because they are not created until the security

interests are transferred into them.   MERS ceased having authority as a "common

agent" to appoint a substitute trustee, assign or transfer Mr. Fitzgerald's Deed of Trust

the instant it was transferred into Residential Asset Securitization Trust 2005-A7. (ER

570)

On or about January 12, 2006, Alfonso Vargas refinanced his home located in Los

Angeles County, California, by executing a Note in the principal amount of

$308,000.00 in favor of America's Wholesale Lender with a related Deed of Trust in

favor of America's Wholesale Lender as Lender, naming MERS as the "beneficiary"

9

and "nominee." (ER 520)  On or about January 19, 2006, as part of his refinancing,

Mr. Vargas also executed a Home Equity Credit Line Agreement and Disclosure

Statement (hereinafter referred to as the "HELOC Agreement") secured by a Deed of

Trust MERS as the "beneficiary" and "nominee" in the principal amount of

$38,500.00.  (ER 520) Upon information and belief, the loans described in the

paragraphs above relating to Mr. Vargas were based on stated income and/or no proof

of income.  (ER 521)

America's Wholesale Lender was a subsidiary of Countrywide Home Loans, Inc.

There were many misrepresentations and irregularities in the application process,

including but not limited to Plaintiff not signing the application at the time it was

filled out by agents of Countrywide Home Loans, Inc. or America's Wholesale

Lender; misrepresentations to Plaintiff about the interest rate on the loan and the

amount of monthly payments.  (ER 522-525)   Both loans contained predatory lending

terms and upon information and belief, no Final HUD-1 forms were ever completed

and provided to Mr. Vargas as required by federal law. Further, Mr. Vargas primarily

speaks Spanish and, upon information and belief, none of the closing documents were

translated into Spanish as required by, *inter alia*, California Civil Code § 1632.  (ER

525-527)

10

## V.    SUMMARY OF THE ARGUMENT

The J.P.M.L. erred in establishing the MDL Court, as doing so did not serve any of the stated purposes of multidistrict litigation.  The MDL Court then erred in issuing an order "interpreting" the J.P.M.L.'s order splitting the claims in the cases, instead of referring the question back to the J.P.M.L.  The MDL Court's order redefined which claims were remanded to the transferor courts and exacerbated the jurisdictional issues in this case.  This critical error created a situation whereby MERS and the other Defendants were able to convince the transferor courts that they lacked jurisdiction to decide certain claims which the J.P.M.L. had clearly intended the transferor courts to have jurisdiction over, creating an impossible conundrum for Plaintiffs/Appellants.

The MDL Court also erred in misapplying the Rule 12(b) standards for a dismissal on factual grounds.  It is clear from reading the order dismissing the case that the MDL Court, in the first few pages, decided the case on projected factual and legal grounds, not on Rule 12(b).  The MDL Court further misapprehended the elements of the CAC, misapplied this court's holding in *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034 (9th Cir. 2011) and further failed to give Appellants an opportunity to amend.

11

## VI.   ARGUMENT

### A. There were Substantial Errors in the Establishment of the MDL Court's Jurisdiction.

In the establishment of the MDL Court's jurisdiction, there were substantial errors in not only combining the actions from different states, but also in transferring those actions to the District of Arizona, which proved itself incapable of administering such a complex case. There were not sufficient common questions of fact between the different actions, which, in part, were based on violations of state non-judicial foreclosure law, to warrant consolidation. The litigation was not served by consolidation, the consolidation did not promote efficiency but, in fact, created more complexity and increased the litigation costs for the litigants and the judiciary.

### 1.  The J.P.M.L.  Erred In Transferring The Cases To The MDL Court.

The Joint Panel on Multidistrict Litigation has been given broad powers to transfer civil actions to a centralized venue for coordination of pretrial litigation, pursuant to 28 U.S.C. § 1407(a).  Under § 1407, consolidation of multiple actions involving common questions of law and fact is appropriate when centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.  *In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351, 1352 (J.P.M.L. 2007).  Consolidation pursuant to § 1407 is not appropriate, however, "unless the convenience of parties and witnesses is served and

12

the just and efficient conduct of actions is promoted by such a transfer." *In re*

*Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969).

When determining whether transfer is appropriate, inconvenience and expense

caused by transfer is to be balanced against any overall savings from convenience of

including all suits in coordinated or consolidated pretrial proceedings. *In re Sugar*

*Industry Antitrust Litigation (East Coast)*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979).

In order to consolidate pretrial proceedings, questions of fact and law must be similar

and "sufficiently complex and/or numerous to justify transfer." *In re Best Buy Co.*

*Inc., Restocking Fee Sales Practices Litigation*, 528 F. Supp.2d 1363, 1364 (J.P.M.L.

2007).

**a)  The Actions Were Not Sufficiently Complex And / Or Numerous To Justify
Transfer Because The Common Question Among The Cases Was Simply The
Legality Of MERS' Actions Under Specific State Laws.**

Since the creation of multidistrict litigation, actions were required to be complex and

numerous in order to justify consolidation to a central district for pretrial litigation.

For consolidation to be warranted, common questions of fact must "predominate over

individual questions of fact." *In re Eli Lilly & Co. Oraflex Products Liability*

*Litigation*, 578 F. Supp. 422, 423 (J.P.M.L. 1984); *In re Pan American World Airways*

*In. Maternity Leave Policies Litigation,* 414 F. Supp. 1232 (J.P.M.L. 1976).  "Where

only a minimal number of actions are before the Judicial Panel on Multidistrict

Litigation, parties moving for consolidated pretrial proceedings have a strong burden

13

to establish that the common factual questions are sufficiently complex and that the accompanying discovery will be so time consuming as to justify transfer." *Id.; see also, In re Magic Marker Securities Litigation,* 470 F. Supp. 862, 865 (J.P.M.L. 1979)*; In re Garrison Diversion Unit Litigation,* 458 F. Supp. 223 (J.P.M.L. 1978); *In re 21st Century Productions Inc. "Thrilsphere" Contract Litigation,* 448 F. Supp. 271 (J.P.M.L. 1978); *In re Raymond Lee Organization, Inc. Securities Litigation,* 446 F. Supp. 1266 (J.P.M.L. 1978).

In *In re Wyeth Patent Infringement Litig.,* 445 F. Supp. 992, 993 (J.P.M.L. 1978), the J.P.M.L. decided that "discovery in each action [focused] on highly complex and technical material concerning both the technology involved in the manufacture of PET bottles and the validity of the Wyeth patent." Despite the complex subject matter, the J.P.M.L. concluded transfer would be inappropriate since the movant failed to establish its burden to show the "common factual questions [were] sufficiently complex or that the accompanying discovery w[ould] be so time consuming as to justify transfer." *Id.* The Wyeth Panel added, "suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery." *Id.* Deciding *In re Pullen & Associates, LLC, Brokered Group Health Plans Litig.*, 366 F. Supp.2d 1383, 1383 (J.P.M.L. 2005), the J.P.M.L. declined to consolidate actions because the seven cases were neither complex nor numerous to consolidate.

14

In this case, the J.P.M.L. was presented with six actions challenging the legality of the MERS System, which required application of state-specific real estate law. (ER 1002-1005) Transfer Order, page 4, Schedule "A."] Four of the six actions were already pending in the United States District Court of Nevada.  The basis of the complaints was that the MERS System was a sham, and neither MERS, nor any assignee of MERS, had an interest in the Plaintiffs' Deeds of Trust.  (ER 216-219), at "general allegations"] Unlike *Wyeth*, the common facts did not involve complicated material or technology; rather, the common issues were whether the formation and operation of MERS resulted in injuries to the Plaintiffs.[4]  In addition to lacking complex common facts, the present case had even fewer actions to be consolidated than *Pullen*.  Because the common facts were neither complicated or numerous, consolidation via § 1407 was improper.

**b)  The California and Arizona Actions Did Not Share Sufficiently Common Questions Of Fact Because The Only Common Thread Was MERS, While The Bulk Of The Factual Allegations Were Related To Actions By Individual Defendants Under State Non-Judicial Foreclosure Laws.**

"Existence of common questions of fact among civil actions pending in different districts is the initial criterion which must be satisfied before any such actions may be transferred under this section relating to coordinated or consolidated pretrial

---

[4]  In fact, the simplicity of the formation and operation of MERS is illustrated by the fact that it is commonly explained in several paragraphs. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038-39 (9th Cir. 2011).

proceedings for multidistrict litigation."[5] *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969).

In *Grand Funk R.R. Trademark Litigation*, 371 F. Supp. 1084, 1084 (J.P.M.L. 1974), a band (Grand Funk) independently embarked on a nationwide concert tour, and their manager concurrently brought twenty-nine actions involving common questions of fact concerning the validity and ownership of the trademark. The J.P.M.L. concluded that although the "actions appear to contain limited common questions concerning the ownership of the Grand Funk Railroad trademark… transfer of all the subsequently filed infringement actions to the Southern District of New York at this time would needlessly entangle third parties in the fundamental dispute and only tend to delay the expeditious handling of that action." *Id.* at 1085. Additionally, because "discovery involving defendants' alleged infringement will focus on localized factual issues concerning the nature, scope, extent and effect of the alleged promotional activities," the J.P.M.L. found that transfer of the actions would neither serve the "convenience of the majority of the parties and witnesses nor promote the just and efficient conduct of the litigation." *Id.*

In this case, the <u>*only*</u> common question of fact among the cases was whether the MERS System was a sham. Because MERS is merely an electronic recording system

---

[5] *See also In re Admission Tickets*, 302 F. Supp. 1339 (J.P.M.L. 1969) ("Existence of one or more common questions of fact is statutory predicate for transfer of cases to single district for coordinated or consolidated pretrial proceedings.")

used by the other defendants,[6] the remaining focus of litigation concerned the nature,

scope, extent and effect of the use of the façade that is the MERS System.  Just like

*Grand Funk R.R.*, the heart of discovery was the alleged wrongful actions made on

behalf of MERS by Defendants who signed misleading and invalid documents as

"authorized signatories" of MERS. While MERS was effectively touring the country

designated as nominee or beneficiary on all the loans, discovery would focus mainly

on the local defendants, and thus consolidation was unnecessary.  The J.P.M.L

therefore erred when it combined all six cases and transferred them to Arizona for

joint pretrial litigation.

### c)  The Purpose Of Multidistrict Litigation Was Not Served By The Consolidation Of Nevada Actions With Actions From Arizona And California Because It Did Not Promote Efficiency Or Convenience.

While there are many considerations when determining whether consolidation of

several actions in one district is appropriate under § 1407, no transfer is appropriate

unless it accomplishes the purpose of the jurisdictional statute which is to: (1) serve

the convenience of the parties and witnesses;[7] (2) promote just and efficient conduct

---

[6] In fact, it was common knowledge at the time of the transfer that MERS rarely took any action itself; rather, the other Defendants, known as "MERS members," took action on behalf of MERS by use of "authorized signatories" as alleged in the CAC.  (ER 216-217 )

[7] *Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504 (J.P.M.L. 1976);  *In re Caesars Palace Securities Litigation*, 360 F. Supp. 366 (S.D. N.Y. 1973).

17

of the litigation;[8] (3) eliminate duplicative discovery;[9] (4) prevent inconsistent pretrial rulings;[10] (5) and conserve the resources of the parties, their counsel, and the judiciary.[11]  Consolidation of cases is inappropriate where the transfer and addition of actions would "needlessly entangle … and only tend to delay expeditious handling of action."[12]

In the present case, all actions alleged either a statutory violation of the respective state's non-judicial foreclosure law, or simply claimed the common law tort of wrongful/unlawful foreclosure.  (ER 213)  The federal district courts retained jurisdiction of these actions either by diversity[13] or ancillary jurisdiction.[14]  As a result, the four actions pending in Nevada were based upon Nevada law and the two actions in California and Arizona were based upon their respective states' law. Consolidating two individual actions based upon differing state law with four actions

---

[8] *In re Westec Corp.*, 307 F. Supp. 559 (J.P.M.L. 1969).

[9] *In re Parmalat Securities Litigation,* 350 F. Supp.2d 1356 (J.P.M.L. 2004); *In re Allegheny Energy, Inc., Securities Litigation*, 259 F. Supp.2d 1368 (J.P.M.L. 2003).

[10] *In re Vonage Marketing and Sales Practices,* 505 F. Supp.2d 1375 (J.P.M.L. 2007);  *In re National Sec. Agency Telecommunications Records Litigation,* 474 F. Supp.2d 1355 (J.P.M.L. 2007).

[11] *In re Pharmacy Ben. Managers*, 452 F. Supp.2d 1352 (J.P.M.L. 2006); *In re Vonage Initial Public Offering (IPO) Securities Litigation,* 471 F. Supp.2d 1354 (J.P.M.L. 2007); *In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351 (J.P.M.L. 2007).

[12] *In re Grand Funk R. R. Trademark Litigation*, 371 F. Supp. 1084 (J.P.M.L. 1974).

[13] 28 USC § 1332.

[14] 28 U.S.C. § 1367.

18

based upon yet another state's law needlessly entangled and delayed the expeditious

handling of the actions.  Tripling the legal analysis in order to add two actions to four

others simply does not promote just and efficient conduct of the litigation.

Likewise, consolidation of actions is not appropriate when "plaintiffs can take certain

measures to avoid unnecessary duplication."[15]  Suitable alternatives to a transfer under

§ 1407 include: seeking an appropriate order to make discovery taken in either action

applicable to the other; filing notices for a particular deposition in all relevant courts;

thereby, making the deposition applicable in each jurisdiction; seeking orders from

applicable jurisdictions, that directed the parties to coordinate their pretrial efforts; and

seeking a stipulation among the parties that all discovery may be used in both actions.

*Drowning Incident at Quality Inn*, 405 F. Supp. at 1306 (*citing* Cf. Manual for

Complex Litigation, Part I, Sec. 3.11 (rev. ed. 1973)).

In the present case, all Plaintiffs shared the same counsel, and Defendants' counsel

were substantially the same.  (ER – JPTM Order) Accordingly, there was no

appreciable risk of duplicative discovery.  Inasmuch as Plaintiffs were represented by

the same counsel, all of the suitable alternatives were available to them to ensure the

just and efficient conduct of litigation. As in *In re Pullen*, where the Panel declined to

transfer actions because the "two constituent actions with the most commonality,

---

[15] *In re Pan Am. World Airways, Inc. Maternity Leave Policies Litig.*, 414 F. Supp. 1232, 1234 (J.P.M.L. 1976); *In re Drowning Incident at Quality Inn Ne., Washington, D. C., on May 3, 1974*, 405 F. Supp. 1304, 1306 (J.P.M.L. 1976).

19

brought respectively by an employer and its employees, [were] already pending in the same district,"[16] all four Nevada actions were pending in the same district and filed by the same counsel. (ER 1002-1005) Therefore, transfer to Arizona was unnecessary. Further, the risk of inconsistent rulings was irrelevant in this matter because the underlying actions were state actions and thus no federal question requiring uniformity existed. Because the foreclosure laws and real estate laws of each state are different, inconsistency in potential application of state law is irrelevant.

Finally, consolidation did not conserve the resources of the parties, their counsel, and the judiciary. As discussed above, the core of the Plaintiffs' actions was the Defendants' unlawful creation and use of the MERS System. As a result, discovery of each action would be predominated by the local actions of the title companies, foreclosing agents, and their agents; consolidation only serves to distance the litigation from the place of discovery.[17] Such a result only serves to drive up the costs of litigation.

Therefore, the J.P.M.L erred when it combined the actions from Nevada, Arizona and California because there did not exist sufficient common questions of fact, nor the

---

[16] *In re Pullen*, 366 F. Supp.2d at 1384.

[17] Such actions include the execution and recording of Notices of Defaults, Notice of Trustee Sales, and Trustee's Deeds Upon Sale, as well as conducting the foreclosure sales. Because these actions are required to be performed in the county where the real property is located, the majority of discovery would take place locally.

required complexity of issues; rather than increase efficiency, consolidation created a more inefficient process and resulted in an incoherent and unfair prejudice to the Plaintiffs.

**2.  The J.P.ML Erred When It Transferred The Actions To The Transferee Court In The District Of Arizona Because The Majority Of Plaintiffs And Witnesses Were In Nevada, The Nevada District Court Had More Experience With The Pretrial Issues Of The Case, And The Arizona Court Was Incapable Of Properly Administering A Case Of This Type.**

Transfer to a foreign district is not preferred when "convenience of all parties and their witnesses would be best served by leaving the actions in the [present district] where the parties and witnesses are located." *In re Westec Corp.*, 307 F. Supp. 559, 562 (J.P.M.L. 1969); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976).  Two-thirds of the actions in this case were pending in Nevada under Nevada law at the time the J.P.M.L. entered its order.

The J.P.M.L. has previously established that "one of the purposes of coordinated or consolidated pretrial proceedings is to streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of cost and a minimum of inconvenience to all concerned." *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig*., 424 F. Supp. 504, 507 (J.P.M.L. 1976) (citing *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974) *aff'd sub nom. In re Nissan Antitrust Litig.,* 577 F.2d 910 (5th Cir. 1978)).  When determining what district will be convenient, the Panel has considered the location of

21

the corporate headquarters of the parties, location of witnesses, geographical area where the majority of discovery will take place, the district in which the majority of the actions are pending, and the district with the most advanced litigation. *In re Bristol Bay*, 424 F. Supp. at 507.  Additionally, the J.P.M.L. prefers to transfer the actions to the focal point of discovery.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251 (J.P.M.L. 1983); *In re Industrial Wine Contracts Securities Litigation*, 386 F. Supp. 909 (J.P.M.L. 1975); *In re Travel Agent Com'n Antitrust Litigation*, 290 F. Supp.2d 1381 (J.P.M.L. 2003).

In the present case, convenience did not favor consolidation in Arizona. The majority of plaintiffs were located in Nevada, only one action was located in Arizona, and one action was located in California. As a result, the vast majority of the witnesses were also from Nevada.  To the extent that some witnesses were located in California or Arizona, Nevada was a more convenient focal point, as it partially separates both states.

Further, two-thirds of the actions were pending in Nevada, and the district court with the most advanced pretrial litigation was in Nevada, which was already contemplating dispositive motions and had already granted preliminary injunctions.  In all categories and considering all factors provided by case law, Arizona was not the most convenient venue, especially compared to Nevada.

22

When selecting a transferee court, the J.P.M.L. should select an "experienced and capable judge,"[18] "experienced in complex multidistrict litigation,"[19] and capable of "steer[ing] the litigation on a steady and expeditious course." *In re Seroquel Products Liability Litigation*, 447 F. Supp.2d 1376 (J.P.M.L. 2006); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 290 F. Supp.2d 1376 (J.P.M.L. 2003); *In re Boscov's Dept. Store, LLC, Fair and Accurate Credit Transactions ACT (FACTA) Litigation*, 528 F. Supp.2d 1341 (J.P.M.L. 2007).

While the transferee court may have presided over one case involving MERS, the court was clearly incapable of steering multidistrict litigation on a steady and expeditious course. This is illustrated by the fact that it took the court fourteen months to appoint lead counsel for the Plaintiffs. The J.P.M.L. Transfer order was filed December 7, 2009, yet lead counsel was not appointed until February 18, 2011, some 1,263 filings later. (ER 1306) Without lead counsel, Plaintiffs were prejudiced by not being unified. The order calling for lead counsel for MERS, on the other hand, was filed *sua sponte* almost exactly one year earlier. (ER 1182)

---

[18] *In re Ampicillin Antitrust Litigation*, 315 F. Supp. 317 (J.P.M.L. 1970); *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, U.S.Jud.Pan.Mult.Lit.2010, 731 F.Supp.2d 1352; *In re Welding Rod Products Liability Litigation*, 269 F. Supp.2d 1365 (J.P.M.L. 2003).
[19] *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F. Supp.2d 1377 (J.P.M.L. 2005).

23

The transferee court was simply not sufficiently experienced in multidistrict litigation and was unable to steer the multidistrict litigation on a steady and expeditious course. Thus, the J.P.M.L erred in transferring the cases to Arizona and in denying Plaintiffs' requests to transfer the actions to Nevada, rather than Arizona.

## B.  The MDL Court's Administration of the Cases was Fatally Flawed.

### 1.  The MDL Court Improperly Re-Interpreted the J.P.M.L. Order Splitting The Claims.

The J.P.M.L.'s Transfer Order stated that it was transferring all claims "regarding the formation and operation of the MERS system" to the MDL Court and remanding the claims "related to loan origination and collection practices."  (ER 1004)  The very next sentence in the Transfer Order defines non-transferred claims as those "unrelated to the MERS system."  (ER 1004)   These definitions are internally inconsistent, because every claim "related to loan origination" necessarily related to MERS, which was a named "beneficiary" and "nominee" on every Deed of Trust in every Nevada, Arizona, and California case.

Recognizing this issue, the MDL Court entered its own Order "clarifying" the J.P.M.L.'s Transfer Order on [date], which created its own distinction: remanding claims that "[a]lthough naming MERS as a Defendant, alleged conduct that … otherwise stray[ed] from the common factual core of the MDL."  (ER 1040)  By attempting to "clarify" the J.P.M.L. Transfer Order, the MDL Court violated its

24

jurisdictional mandate and supplanted the J.P.M.L.'s Transfer Order with its own directive.

## 2.  The Claims Were Not Properly Split Because the MDL Court Exceeded Its Jurisdiction As Well As Failed To Clearly Differentiate Which Claims Had Been Transferred.

The result of the MDL Court Order "interpreting" the J.P.M.L. Transfer Order was some of the Plaintiff/Appellant's claims were both transferred *and* remanded. Characterizing the Plaintiffs' claims as "related and unrelated to MERS" distorted the Plaintiffs' legal theories.  The effect of such a split was akin to having a plaintiff present two cases alleging conspiracy, and prohibiting her from mentioning the other co-conspirators.  With one set of claims with the Transferee Court and another with the Transferor Court, both sets of claims were defenseless against Defendant/Appellees' motions to dismiss.

Almost immediately, MERS took advantage of the MDL Court's Order "interpreting" the J.P.M.L. Transfer Order's ambiguous definition of transferred claims, using whichever definition suited MERS at the time.  An example of this is MERS' Motion to Dismiss  (ER 1198) which alleged dismissal was mandatory because, by definition, no claims related to the formation and operation of MERS were remanded to the Transferor Court.

25

**3.  The MDL Court Itself Inconsistently Transferred Claims After Re-Interpreting The J.P.M.L. Transfer Order.**

The result of the MDL Court Order "interpreting" the J.P.M.L. Transfer Order was that some of the Plaintiff/Appellant's claims were both transferred *and* remanded. Characterizing the Plaintiffs' claims as "related and unrelated to MERS" distorted the Plaintiffs' legal theories.  The effect of such a split was akin to having a plaintiff present two cases alleging conspiracy, and prohibiting her from mentioning the other co-conspirators.

Each and every remand order issued by the MDL Court appears to contain a unique approach to the J.P.M.L.'s initial Transfer Order.  Instead of consistently applying the distinctions provided in the J.P.M.L.'s initial Transfer Order, the MDL Court reinterpreted the Transfer Order by issuing "clarifying" orders which retained, remanded, or shared the claims of the various actions.  This *ad hoc* approach to interpreting the J.P.M.L.'s initial Transfer Order resulted in confusion and further inconsistencies.

For example, *Burke*[20] was added by the J.P.M.L. to the MDL by the Conditional Transfer Order -1 as a tag along on January 25, 2010. [ER 1174]  *Fitzgerald*[21] was likewise added by the J.P.M.L. to the MDL by the Conditional Transfer Order-2 on February 16, 2010. [ER 1181]  Both cases were initially filed in the United States

---

[20] *Burke* (CV 10-220-PHX-JAT).
[21] *Fitzgerald* (CV 10-460-PHX-JAT).

26

District Court for the District of Nevada, by the same counsel. [ER 1070 & 1075] While different cases, the claims in *Burke* and *Fitzgerald* were nearly identical.[22] Even though the J.P.M.L. split the claims of both cases with the same standard distinction,[23] the MDL Court's respective remand orders inexplicably retained, remanded, and split the claims differently.[24] In *Burke* the MDL Court retained all of claims 1, 3, and 4, choosing to send claims 2, 5, and 6 to the District Court of Nevada [ER 1213]; yet in *Fitzgerald*, the MDL Court retained claims 1-4, remanded claim five in its entirety, and sent claim 6 to the District Court of Nevada. [ER 1239-41] Thus, the MDL Court treated identical claims completely differently in cases brought by the same counsel in the same courts: Unjust Enrichment (split in *Burke* and remanded in *Fitzgerald*); Fraud in the Inducement (retained in *Burke* and remanded in *Fitzgerald*); and Requested Relief: injunctive, reformation, declaratory, and quiet title (split in both *Burke* and *Fitzgerald*).

---

[22] Both cases contained the following claims in this order: 1. Wrongful Foreclosure; 2. Fraud in the Inducement; 3. Conspiracy to Commit Fraud By Creation, Operation and Use of the MERS System; 4. Conspiracy to Commit Wrongful Foreclosure By Creation, Operation and Use of the MERS System; 5. Unjust Enrichment; and 6. Relief requested: Injunctive, reformation, declaratory, and quiet title.

[23] "All claims in these actions that are unrelated to the formation and/or operation of the MERS system are separated and simultaneously remanded under 20 USC 1470, to the District Court of Nevada." [ER 1003]

[24] *See*, Dkt. # 409, 629, & 631 [ER 1213, 1239-1241]

As litigation continued, the disparity between which claims were retained, remanded, or split grew. For example, *Sandefur*[25] was added by the J.P.M.L. to the MDL by the Conditional Transfer Order -7 as a tag-along case on July 2, 2010. [ER 1263] *Sandefur* was also initially filed in the United States District Court for the District of Nevada by the same counsel as *Burke* and *Smith*. [ER 1085] *Sandefur* contained nearly identical claims to *Burke* and *Smith*,[26] yet despite being transferred by the J.P.M.L. with the same standard distinction less than six months later, ***all*** of *Sandefur's* claims were retained in full by the MDL Court. [ER 1317 & 1318] This is an almost perfect juxtaposition from the claims first remanded by the MDL Court.[27]

Plaintiffs/Appellants were simply unable to ever get proper balance on such an unlevel playing field and were, thus, significantly prejudiced by these inconsistent splits. The District Court was always confused as to what claims it did and did not have jurisdiction over and, frankly, so were Plaintiffs/Appellants.

---

[25] *Sandefur*, (CV 10-1421-PHX-JAT).

[26] *Sandefur* contained the following claims: 1. Wrongful Foreclosure; 2. Fraud in the Inducement; 3. Fraud; 4. Conspiracy to Commit Wrongful Foreclosure; 5. Unjust Enrichment; 6. Relief requested: Injunctive, reformation, declaratory judgment and quiet title; 7. Violation of NRS 107.080 and 645F.440.

[27] *See*, MDL Court's first remand order, filed on March 23, 2010 wherein out of the 13 claims in *Vargas*, 1 claim was retained in its entirety, 11 claims were remanded in their entirety, and only injunctive relief was split between the district courts. [ER 1015-1028]

**C. The MDL Court Erred In Applying The Standards For A Rule 12(B) Motion To Dismiss When It First Ruled On Legal Issues.**

**1.  The Proper Procedural Device For The Disposition Of This Matter Is A Rule 56 Motion For Summary Judgment Because The District Court, When Deciding The Matter, Acknowledged The Lack Of Genuine Dispute Of Material Fact.**

Under rule Fed. R. Civ. P. 12(b)(6), which governs motions to dismiss for failure to state a claim ("MTD"), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A 12(b)(6) motion must be converted to a Rule 56, Motion for Summary Judgment ("MSJ") when the court considers matters outside the pleadings in ruling on the motion. Fed. R. Civ. P. Rule 12(d). The standard for a MSJ is different from a MTD in that it permits the court to consult not only the pleadings, but also any affidavits, discovery, and other evidence to determine whether any true factual dispute exists between the parties. The decision to convert a motion to dismiss into a motion for summary judgment is reviewed for abuse of discretion. *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Whether the court calls it a motion to dismiss or a motion for summary judgment is often irrelevant, but what the district court actually does is the determining factor for the proper standard. 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.). The appellate court is not bound by the particular designation that the MDL court places upon its disposition of the case. *Id.* In its order dismissing this case, the MDL

29

Court stated "there are **no important factual disputes** between the parties."[28] Rule 56 states, "[t]he court shall grant summary judgment if the movant shows that there is **no genuine dispute as to any material fact**…." Fed. R. Civ. P. Rule 56(a). While the MDL Court used the designation of a motion to dismiss for the disposition of this case, it was in fact making a determination on the unresolved legal issues, rather than determining whether a sufficient factual basis exists to sustain the claims. By determining that no factual dispute existed the Court moved past the pleading standard for Motion to Dismiss as required by *Iqbal*[29] and *Twombly*[30] and into the realm of *Celotex Corp.*[31] and a Motion for Summary Judgment.  As discussed below, this was improper.

### 2.  The MDL Court Improperly Made Legal Determinations Which Impacted Its Factual Decisions.

The Eight Circuit Court of Appeals has held that "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). The Ninth Circuit has generally concurred, finding that when only a "question of law is presented" summary judgment is proper. *Asuncion v. Dist. Dir. of U. S. Immigration*

---

[28] Doc #1602, pg. 5, FN3.
[29] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[31] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

& *Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970). If the court converts a MTD to a MSJ, there must be notice, even if the conversion is not explicit, to allow the parties time to revise and possibly extend their arguments for the new pleading standard. *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985). Failure to provide notice of a conversion from a MTD to a MSJ and give parties a reasonable opportunity to present relevant evidence is a reversible error. *Erlich v. Glasner*, 374 F.2d 681, 683 (9th Cir. 1967).

In this case the MDL Court explicitly stated that the entire case turned not on factual contentions, but instead on "three [legal] theories."[32] By dismissing any differences in the facts and skipping ahead to decide on the merits of the case, the court was *sua sponte* issuing a summary judgment. In effect, the court moved past deciding if the factual contentions contained in the complaint were sufficient to support a claim for relief and instead decided if the legal conclusions were correct. Without providing the Plaintiffs any notice as to the new standard, the court examined the facts and the law with a different standard than the one noticed to the parties.

The court improperly made legal determinations that impacted its factual decisions. Even if the court were making both factual and legal conclusions because of the way in which it went about first dismissing any difference in the factual issues, then proceeding to make legal conclusions, the court put the cart before the horse.

---

[32] CR 1602, p. 5.

31

If this Court finds that the Motion to Dismiss was the proper procedure at this

junction, the issue before this court is a question of law which is reviewable *de novo*.

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011). On

a motion to dismiss, all facts must be accepted as true and must be construed in the

light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136

(9th Cir. 2012). "A complaint need not state 'detailed factual allegations,' but must

contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"

*Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]o long as the

plaintiff alleges facts to support a theory that is not facially implausible; the court's

skepticism is best reserved for later stages of the proceedings when the plaintiff's case

can be rejected on evidentiary grounds." *Balderas v. Countrywide Bank, N.A.*, 664

F.3d 787, 791 (9th Cir. 2011) (quoting *In re Gilead Sciences Securities Litigation*, 536

F.3d 1049, 1057 (9th Cir. 2008)). "A complaint containing allegations that, if proven,

present a winning case is not subject to dismissal under 12(b)(6), no matter how

unlikely such winning outcome may appear to the district court." *Id.* The Supreme

Court has even recently held that the question is not whether the plaintiff will

ultimately prevail, but whether his complaint is sufficient to cross the federal court's

threshold. *Skinner v. Switzer*, __ U.S. __, 131 S. Ct. 1289, 1296 (2011).

**3.  The MDL Court Improperly Made All Factual Presumptions In Favor Of Defendants To The Detriment Of Plaintiffs.**

A court "must accept as true all of Plaintiff's well-pled allegations and resolve doubts in favor of the Plaintiff." *Twombly*, 550 U.S. at 570  (emphasis added).  Here, the MDL Court did the exact opposite.

The MDL Court improperly reviewed the CAC and ignored factual pleadings which, at a minimum, offered Appellees sufficient notice of the claims against them. Specifically, the Order of Dismissal repeatedly took its factual recitations from Defendants' motions and responsive pleadings, rather than from Plaintiffs' CAC.  The section "General Discussion of MERS," beginning at page 4 of the Order of Dismissal (ER 31-32) illustrates the Court's use of Defendants' benign, whitewashed explanation of MERS' system rather than Plaintiffs' factual recitation from the CAC. This becomes critically important when it concludes that "there are no important factual disputes between the parties.  Either the operation of the MERS system, as it is alleged to operate, violates the Deeds of Trust statues [sic] in such a way to render all non-judicial foreclosure of any Deed of Trust naming MERS as a beneficiary illegal, or Plaintiffs have no recoverable claim."  (ER 32, n. 3)

  Throughout the remainder of the Order of Dismissal, the MDL Court made its determination based upon the presumption that there were no disputes of fact. The acts of the MDL Court were tailored to dismissing the case by adopting the Defendants'

33

facts which were wholly unsupported and inappropriate for granting a Motion to

Dismiss.

**D. The MDL Court's Order Completely Misinterpreted the CAC.**

**1.  The MDL Court Misconstrued The Impact Of The Factual Recitations And Ignored The Allegations Regarding Lack Of Agency.**

The MDL Court reduced the issues of this case to three theories of real property law,

gleaned from Plaintiffs' Response to the Motions to Dismiss: "Finally, third, if MERS

was actually in possession of some right as an agent under the deed of trust, its

attempted assignment was ineffective because only the true beneficiary (Principal) can

make such an assignment."  The MDL Court ignored or misunderstood that a factual

dispute existed as to the MERS assignments and the existence of an agency

relationship at any given point in a plaintiff's chain of title.

First it presumed that all parties consented to MERS' involvement in their original

Deeds of Trust (a MERS as original mortgagee or "MOM").  In fact, many Deeds of

Trust were assigned to MERS after origination (a MERS by assignment or "MA").

Further, whether or not MERS can act as an agent for the "lenders' successors and

assigns" cannot be determined by a contract entered into between the lender and the

borrower.  MERS must be designated as an agent by the successor or assigned

34

beneficiary. (ER 246 – 247)  Whereas some legal authority may support[33] the
contention that MERS can act as an agent in certain circumstances, whether MERS
was actually acting as an agent by the successor is a question that is not answered but
alleged in the negative by the Appellants.  An agent cannot appoint itself but must be
appointed by a principal with an actual relationship to MERS.  As explained to the
MDL Court at oral argument, if MERS was named, it was because the Deed of Trust
was going to be securitized.  The mechanism by which MERS had authority to act
was its "common agency" to all MERS members.  Yet, the moment the Deed of Trust
was transferred to a mortgage-backed securitized pool ("MBS"), that agency
relationship terminated because every single MBS was a non-MERS member.  Like a
snake swallowing its own tail, it is a basic conundrum of the MERS system that it
destroys its own principal-agency relationship upon completion of the securitization
process.  That is why MERS cannot foreclose in its own name any longer – there is no
principal who can direct MERS to record assignments, appoint substitute trustees or
otherwise act once the Deed of Trust is transferred to a MBS.

Whether or not the assignees or trustees could act was a question of fact and could not
be presumed by the MDL Court.  Thus, the MDL Court's recitation of the case law

---

[33] The MDL Court relied upon other federal district court cases which are not binding
upon this Court.  This reflects that many of the issues had not previously been decided by
the Circuit Courts; that the judgment is one of first impression; and that the public policy
implications are noteworthy.

35

did not cover the allegations made by the Appellants, that a true beneficiary was not initiating foreclosure unless there was some proof that the beneficiary had properly appointed MERS as its agent. (ER 33) The issue of agency was never resolved and completely omitted in the order dismissing the CAC.

### 1. The MDL Court Misconstrued The Allegations Regarding Robo-Signing.

The MDL Court further erred in determining that robo-signing on Appellants' documents was not damaging to the Appellants and barred by a statute of limitations. (ER 35) The Appellants suffered damages because of the loss of communication with their contracting parties. This country has just suffered the worst economic devastation in modern history. Not only can the Appellants not reach their contracting parties, those parties, in most instances, no longer exist. The borrowers are left to take the entire brunt of the economic devastation because the "lenders" have taken the benefit of their bargain, wrecked the economy for the borrowers, and left the building. The documents initiating the foreclosure, the Notices of Default, were not recorded years earlier, but within weeks of the Plaintiffs filing the initial complaint.

The hardest part of understanding MERS is that it is only the sum of its parts. MERS is made up of its members, the major servicer banks and Fannie Mae and Freddie Mac, using a computer as a vehicle to track the transfers of Deeds of Trusts and servicing rights without publicly recording anything. The impact of that system, however, kept borrowers from any contact with their "lender." (ER 217) The impact

36

of that system was to have entities initiating nonjudicial foreclosure without authority from the beneficiary. (ER 216, 18-25) State laws require the beneficiary to initiate foreclosure to insure that the borrower is given his redemption rights and to insure that the lender intends to take the property with all the incumbent responsibility.

The MDL Court stated that under the MERS system "the rights to the mortgage are tracked in an internal electronic data base. . .each time the rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS system." (ER 31)

The MDL Court then makes a generalized and vague statement that the cases from the State of Nevada cited by Appellants (*Spinnato* and *Kartman*) do not state that Nevada law prohibits the authorization of a foreclosure sale due to the operation of MERS. (ER 37) Appellants allege that the MERS system only tracks servicer rights, i.e., the right to service the payments. The servicers hold no notes, have no deeds of trust in their name and have no assignments of either document in their favor. (ER 216) The servicer banks do not hold the security interest. (ER 216) The servicer banks did not loan one penny to the Appellants. These issues cannot be simply overlooked when they are fundamental issues of fact. These issues cannot be surmised or presumed in order to support the legal basis for the MDL Court's grant of the Motion to Dismiss.

## 2.  The Court Misinterprets The Available Case Law.

The MDL Court cannot find a case ruling on the very issue before it, that issue being the inherent flaws in the MERS system in light of specific and general statutory and

37

common law regarding real estate transactions in the United States. Certainly, federal District Courts and Bankruptcy Courts have made rulings on certain tangential issues as begrudgingly conceded by the MDL Court. (ER 32, n. 4) The only Ninth Circuit determination was on totally different claims and then misinterpreted by the MDL Court as discussed below regarding the interpretation of *Cervantes*.

Moreover, the MDL Court relied primarily upon federal district courts interpreting State law (ER 33 – 39; 42) and how the states would interpret the facts in light of their own non judicial foreclosure laws, which were different from state to state. *See, e.g.,* A.R.S. § 33-420(A), NRS 107.080, *et seq*. **_None_** of these cases decide the issue of whether MERS was properly designated as the agent of the beneficiary for foreclosure under the states' nonjudicial foreclosure laws following transfer of the Deed of Trust into a non-MERS entity, the MBS; thus, violating the laws and rendering any foreclosure void.

 The Appellants moved the MDL Court to certify the underlying and critical question to the Nevada Supreme Court to avoid just such reliance upon the federal district courts to interpret state law issues of first impression. The Appellants specifically requested that the MDL Court refer the following question to the Nevada Supreme Court:

**The question of whether naming MERS as a beneficiary solely in the capacity as a nominee for the lender on a deed of trust and the retention of the beneficial interest in the deed of trust by MERS _without_ retention of any interest in the note results in the splitting of the note from the deed of**

38

**trust and renders the note unsecured and the deed of trust unenforceable in a non judicial foreclosure proceeding under Nevada's real property law is a matter of first impression in Nevada.**

(ER 1342, Doc. #1563) The MDL Court denied the request. (ER 1343, Doc. #1600)

### 3.  The Appellants allege that the Defendants have no authority to foreclose.

The Appellants assert the rudimentary, long-accepted concept that in order to enforce

a secured obligation, a holder must have an interest in both that obligation and the

instrument securing the obligation.  This is not some radical concept designed to upset

the applecart.  This is the law according to Article 3 of the UCC and has been adopted

by the Ninth Circuit Bankruptcy Appellate Court:

When a note is split from a deed of trust 'the note becomes, as a practical matter, unsecured.' Restatement (Third) of Property (Mortgage) § 5.4 cmt. (1997). Additionally, if the deed of trust was assigned without the note, then the assignee, 'having no interest in the underlying debt or obligation, has a worthless piece of paper.' 4 Richard R. Powell, *Powell on Real Property,* § 37.27[2] (2000). *Cf. In re Foreclosure Cases,* 521 F.Supp.2d 650, 653 (S.D.Ohio 2007) (finding that one who did not acquire the note which the mortgage secured is not entitled to enforce the lien of the mortgage); *In re Mims,* 438 B.R. 52, 56 (Bankr.S.D.N.Y.2010) ("Under New York law 'foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity.' ") (quoting *Kluge v. Fugazy,* 145 A.D.2d 537, 536 N.Y.S.2d 92, 93 (N.Y.App.Div.1988)).

*In re Veal,* 450 B.R. 897, 916 (B.A.P. 9th Cir. 2011).

Appellants' argument against MERS as the instrumentality to maintain a security

interest in real estate is in line with the historical understanding of property law in the

39

United States.   The Nevada Supreme Court,[34] the Ninth Circuit Bankruptcy Appellate Court,[35] and the Restatement (Third) on Property: Mortgages,[36] all hold that : "A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures." This is the law in the State of Nevada.

In *Foust v. Wells Fargo, Nevada Supreme Court Case No. 55520* the holder of the Deed of Trust substituted the Trustee and commenced the foreclosure sale, but there was no evidence that the holder of the Deed of Trust also owned the Note. The Nevada Supreme Court sated the obvious: "if (the holder of the Deed of Trust) was not entitled to enforce the Note, then the (substitution of the Trustee by the holder of the Deed of Trust) **and the subsequent foreclosure** … may have been in error."  *See also Kartman v. Ocwen LAN Servicing L.L.C.,* Case No.: 2:09-cv-02404-GMN-PAL (2010) (if neither the Trustee nor the Lender sign the Notice of Default, the foreclosure is fatally defective.) The lower court's dismissal was reversed, and the case was remanded *despite the fact the Appellants were in default when the notice of default was executed.*  Because the notes were assigned, neither MERS nor the originally stated "lender" on the Deed of Trust had any interest in the Appellants'

---

[34] The *Foust* opinion was unpublished and cannot be cited as precedent or be cited as legal authority. It is provided to indicate to this Court that Nevada has adopted the Restatement (Third) analysis on mortgage law.
[35] *See, In re Veal,* 450 B.R. 897, 916 (Bankr. App. 9th Cir. 2011).
[36] *See,* Restatement (Third) on Property: Mortgages § 5.4c  (1997).

Note within days after the execution of the documents  when the Note was assigned in blank.

Appellants are not the only parties arguing that the MERS system is inherently flawed.  "Indeed, if the MERS system is simply an effective and harmless innovation, there would be little reason to question MERS's right to foreclose.  But this is not the case.  To the contrary, allowing MERS to foreclose on behalf of its members without the execution of recordable assignments has serious ramifications."[37]  The damage of the MERS system is to the borrower who cannot communicate with the beneficiary of the note.  Moreover, MERS named as the mortgagee or nominee of the lender has placed a cloud on title for every deed of trust recorded with this designation.

**4.  The Underlying Issue For Deeds Of Trust Transferred By MERS Is Whether There Exists Sufficient Continuity Of Agency For The Party Now Seeking To Initiate Foreclosure To Assert Standing.**

The underlying basis for claiming that a violation of the non judicial foreclosure laws has occurred is the same for each and every MERS deed of trust.  To initiate foreclosure under Arizona's nonjudicial foreclosure statute, A.R.S. 33-801, *et seq.*, or

---

[37] *The Case Against Allowing Mortgage Electronic Registration Systems, Inc. (MERS) to Initiate Foreclosure Procedings,*32 Cardozo L. Rev. 1621 (March 2011); *Mortgage Electronic Registration Systems (MERS), its recent Legal Battles and the Chance for a Peaceful Existence,* Loyola Journal of Public Interest Law, 12 Loy.J. Publ. Int. L. 177 (Fall 2010).

under Nevada's, N.R.S. 107.080, the proper party must commence the action.[38]  The

District Courts agree that because of the harshness of nonjudicial foreclosure, it is

important that the statutes be strictly construed in favor of the borrower.  *Patton v.*

*First Fed. Save. & Loan Ass'n of Phoenix,* 578 P.2d 152 (Ariz. 1978); *Krohn v.*

*Sweetheart Properties, Ltd.,* 52 P.3d 774, 777 (Ariz. 2002) (clarifying prerequisites

for nonjudicial foreclosure is compliance with Arizona recording law); *see also,*

*Pasillas v. HSBC Bank, USA, as Trustee for Luminent Mortg. Trust,* 2011 WL

2671894 (Nev. July 7, 2011) (en banc) (remanding foreclosure case for sanctions

against servicer based on failure to comply with Nevada's foreclosure mediation

statute); *Levya v. Nat'l Default Servg. Corp.,* 2011 WL 2670183 (Nev. July 7, 2011)

---

[38] *See* A.R.S. § 33-804(A); A.R.S. § 33-820(A) (requiring that party conducting sale must be a properly appointed trustee, and the trustee must be acting in good faith.).  See also A.R.S. § 33-804(D) (requiring that beneficiaries personally sign and acknowledge a Substitution of Trustee); *Eardley v. Greenberg*, 160 Ariz. 518, 774 P.2d 822 (1989), *vacated, in part, on other grounds,* 160 Ariz. 261, 692 P.2d 724 (1990) (noting the tender doctrine has not been adopted in Arizona).  MERS' substitutions of trustee at issue here do not comply with the statute.  This argument was raised in anticipation of Appellee's argument that the Arizona foreclosures complied with the statute, but such an argument would raise issues not properly considered on a motion to dismiss. The good faith prong is not properly decided on a motion to dismiss.  Good faith must be determined objectively.  *See In re Gordon*, 87 P.3d 89, 93-94 (Ariz. Ct. App. 2004) (holding that good faith of personal representative under A.R.S. § 14-3720 must be determined objectively); *see also San Tan Irrigation Dist. v. Wells Fargo Bank,* 3 P.3d 1113 (Ariz. Ct. App. 2000) (stating that subjective and objective components must be proven to establish "good faith" defenses to conversion action under A.R.S. §§ 47-3405 and 47-3406).  *See also* N.R.S. 107.080 (a foreclosure may be conducted by the beneficiary, the successor in interest to the beneficiary, or the trustee).  California and Oregon's codes are similar.

(same, and holding that lender had not proven the right to foreclose as assignee of original beneficiary). The CAC alleged that the statutory requirements were not followed, that an improper party sought to commence foreclosure and that the homes are not subject to foreclosure based on a split of the note from the deed of trust.[39] The Appellants argue that any action by a MERS Assignee is invalid because any action by MERS was invalid beyond acting as a nominee for the "lender" on the original deed of trust. In the *Landmark Nat'l Bank v. Kesler* case, the Kansas Supreme Court examined in detail MERS's status under the mortgage document as "nominee" for the lender, noting that the relationship between MERS and purported assignee of mortgage and note was that of a "straw man." 216 P.3d 158, 165-66 (Kan. 2009). The court, relying on numerous decisions from other jurisdictions, including those cited by Plaintiffs herein, noted that "in the event that a mortgage loan somehow separates interests of the note and the deed of trust, **with the deed of trust lying with some independent entity, the mortgage may become unenforceable.**" *Id.* at 166-67 (citations omitted) (emphasis added). *Residential Funding Co., L.L.C., v. Saurman,* 2011 WL 1516819 (Mich. Ct. App. 2011).[40]

---

[39] (ER 538-661)

[40] In *Saurman,* the court held that MERS did not qualify to foreclose by advertisement on the grounds that MERS did not possess an interest in the note and also found that MERS' position with respect to the underlying mortgage did not give MERS standing to foreclose by advertisement. Further, the court noted that the MERS system had resulted in a "separation of the note from the mortgage." *Id.* at pp. 8-9.

43

*In re Hawkins* is also significant because the court specifically noted that MERS was not a true beneficiary, stating, "It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation." 2009 WL 901766 at *3. The court noted that the deed of trust (just like the deeds of trust at issue in this case) "attempts to name MERS as both a beneficiary and a nominee." *Id.*

The court further noted that the MERS Terms and Conditions document (cited in the various Complaints) states that "**MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgage properties securing such mortgage loans.**" *Id.* (emphasis in original). The court then noted that a "'beneficiary' is defined as 'one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument.'" *Id.* at 3 (citing Black's Law Dictionary 165 (8th ed. 2004)). Then, the court noted:

> But it is obvious from MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck.

*Id.*[41] The court went on to state that even if MERS was a nominee of the

---

[41] The court's findings show how MERS is a "sham" beneficiary. In terms of how plaintiffs were harmed as a result, the court need only look to the allegations related to how plaintiffs were lured into predatory loans, lost the money they paid on these loans, and then stand to lose their homes, their credit rating and their sense of security. The complaint alleges that the purpose of naming MERS as the beneficiary was to facilitate

44

beneficiary, or the motion was brought by the beneficiary, that was insufficient to confer standing based on Nevada law providing that a promissory note is enforceable by the holder of the note or a nonholder in possession of the note.

*Id.* at 4. The court stated,

Simply being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to foreclose on a deed of trust. For there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." Restatement (Third) of Property (Mortgages) § 5.4 cmt. (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See Restatement (Third) of Property (Mortgages) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 Richard R. Powell, Powell on Real Property, § 37.27[2] (2000).

*Id.* at 4. The court concluded that, in order to foreclose, MERS must "establish there has been a sufficient transfer of both the note and the deed of trust, or that it has authority under state law to act for the note's holder." *Id.*

This finding is not a "show me the note" argument. It is a "show me the authority" argument. Despite the availability of this exacting analysis, the MDL Court stated that none of these cases supports the Appellants' theory that naming MERS as the beneficiary completely destroys the security and bars all attempts at non judicial foreclosure in the four western states. (ER 46) The MDL Court failed to understand

---

the securitization of loans secured by these deeds of trust and to facilitate the appointment of parties as successor beneficiaries for the purpose of foreclosure. (ER 538-661)

that no one court had reviewed the exact issue as is was stated in the MDL, but that these other cases stated similar circumstances and concluded that when MERS attempts to initiate foreclosure, the issue before the court is "show me the authority."

**5. The MDL Court Fell Prey To Its Own Arbitrary Split Of The Claims When It Determined That It Could Not Decide If The State's Non Judicial Foreclosure Statutes Had Been Violated.**

As clearly shown in Section B(3) above, the MDL Court was arbitrary and unclear in what claims should have been decided in the District Court or which in the MDL Court. As a result, the MDL Court did not make consistent determinations remanding or retaining claims, as a whole. Further, when the MDL Court stated in its Orders that that the claims retained by the MDL court were not the claims that stated violations of NRS 107.080, implying that other claims stated those violations, the MDL Court did not point out which claims in what Court were alleging violations of NRS 107.080. By its ineffective and inconsistent severance of the claims, the MDL Court completely deprived the Appellants of the ability to litigate this claim. (ER 38, lines 17 – 19, 27, 28) Thus, the MDL Court left open the determination if the nonjudicial foreclosure laws of the States of Nevada, California, Arizona and Oregon were violated by the very premise upon which MERS existed.

**D. The MDL Court Fundamentally Misconstrued This Court's Decision in** *Cervantes*.

The MDL Court (which issued the underlying decision in *Cervantes*) fundamentally misconstrued this court's recent decision in *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034 (9th Cir. 2011) to support its order dismissing Appellants' cases. First, it stated that *Cervantes* unequivocally mandates the so-called "tender rule,"[42] which it does not. Second, it stated that *Cervantes* concluded that Appellants' contention that, in a MERS loan, "no party has the power to foreclose," but that, as well, is not correct.[43]

With regard to the "tender rule," this court surveyed the holdings of several states, including non deed of trust states such as Massachusetts, which have recognized wrongful foreclosure claims and stated that "we note that such claims typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower." *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d at 1044. It concluded that, because plaintiffs had not alleged that their "homes were sold and, in any event, all are

---

[42] [ER 35 Order at page 8 ]("the tort of wrongful foreclosure requires Plaintiffs to establish that they were not in default when the power of sale was exercised or that they are able to tender the debt owed on the mortgage. *See*, *e.g.*, No. 09-17364, slip. op at 15 (9th Cir. Sep. 7, 2011) (collecting cases)) 09-17364, slip. op at 16 (9th Cir. Sep. 7, 2011)).

[43] [ER 33 Order at page 6 ]

47

in default and have not identified damages. Thus, under the established theories of wrongful foreclosure, the plaintiffs have failed to state a claim." *Id.*

Here, as documents already filed in the MDL Court illustrate, many Appellants ***did*** lose their homes during the pendency of the case. (ER 1356 ((Doc. 1722)), ER 1357 ((Doc. 1728)). Had Appellants been permitted to amend the CAC, such allegations could have been clarified.

With regard to the MERS allegations, *Cervantes* states that:

…the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders. *See Landmark Nat'l Bank,* 216 P.3d at 167. Moreover, the plaintiffs have not alleged violations of Arizona recording and foreclosure statutes related to the purported splitting of the notes and deeds.

*Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d at 1044.

The CAC does exactly what *Cervantes* complaint did not: it ***specifically*** alleged that, because MERS assigned the deeds of trusts into securitized trusts (non-MERS members), the "common agency" was terminated. Thus it alleged that the "nominal holders of the deeds, are not agents of the lenders." (ER 216, 217, 247, 248) Further, the CAC alleged "violations of Arizona [and Nevada] recording and foreclosure statutes related to the purported splitting of the notes and deeds." (ER 219-251, 267-269)

48

**E.  The MDL Court Erred In Dismissing the MERS-Based Aiding and Abetting Claims**

In addition to dismissing the common law and statutory wrongful foreclosure claims, the MDL Court also dismissed Plaintiffs' claims for aiding and abetting wrongful foreclosure and aiding and abetting predatory lending, which claims alleged that the MERS system was used to facilitate wrongful foreclosure on the back end and predatory lending on the front end.  Given the analysis and citation to case law above supporting the MERS-based claims for wrongful foreclosure, and the lengthy factual allegations related to the shareholders' participation in the creation of the MERS System (ER 219-229, 381-661) and how that system was used, the MDL Court erred in dismissing these claims under Rule 12(b)(6).  The MDL Court characterized factual allegations as legal conclusions and/or ignored the factual allegations altogether.  This was improper, and the claims should have been, along with all other claims set forth in the complaint, allowed to proceed on the merits.

**F.  The MDL Court Erred Denying Leave To Further Amend the CAC.**

The Federal Rules of Civil Procedure requires leave to amend a complaint to be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The standard of review for a denial of a motion to amend is abuse of discretion. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). A district court's exercise of discretion based on an erroneous interpretation of the law constitutes an abuse of discretion. *Ahlmeyer v.*

49

*Nevada System of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009). Thus, the appellate court must reverse the district court if, in applying the proper legal standard, the district court overlooks or misconstrues any binding precedent. *Perry v. Brown*, 667 F.3d 1078, 1086 (9th Cir. 2012). Therefore, if this court finds the MDL court was erroneous in its interpretation of the law which led it to find further amendment futile, this court may also find abuse of discretion in preventing future amendment and remand the case back to MDL for not only further proceedings but also additional amendments.

Even if this court finds the MDL Court used the correct legal standard, this court may still find the MDL Court abused its discretion in the application of that legal standard to the facts in the record when determining if further amendments would be prejudicial or futile. *Id.* "Under the abuse of discretion standard, 'if the trial court identified the correct legal rule to apply the relief requested,' the court must, 'determine whether the trial court's application of the correct standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). If one of these criteria is met, this court may have a "definite and firm conviction" that the MDL court reached a conclusion that was a "mistake" and thus abused its discretion.

50

## VII.    CONCLUSION

Appellants set forth sufficient factual allegations related to the MERS system and each Appellants' foreclosures to survive a motion to dismiss.  Appellants alleged how the foreclosures were wrongful and in violation of state statutory laws and common law.  Appellants also alleged facts and submitted numerous exhibits with the complaint that support the Arizona Appellants' false documents claims, particularly the "robosigning" claims, given that numerous instances of robosigning were alleged and exhibited by the documents attached to the complaint and referenced in oral argument on the motion to dismiss.  Finally, Plaintiffs alleged adequate related claims for aiding and abetting wrongful foreclosure, predatory lending, slander of title, unjust enrichment, and declaratory and injunctive relief.  A review of the complaint in its entirety and pertinent case law support reversal of the dismissal and remand of this matter.   Finally, Appellants have shown the overwhelming prejudice they suffered by the MDL Court's arbitrary severance of the claims initiated by the Panel and incorrectly by the MDL Court.

## VII.    STATEMENT OF RELATED CASES

Appellants hereby state that the following case pending in this Court is a related case as defined in Ninth Circuit Rule 28-2.6:

## VIII.  CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P 32(a)(7)(C) and the Ninth Circuit Rules 32-1, the attached opening brief is proportionately spaced with a typeface of 14 points, in Times New Roman font, generated in the Microsoft Word processing software, and contains approximately 50 pages, containing 14,783 words.

DATED this 11th day of June, 2012.

_/s/ TREVA J. HEARNE_

TREVA J. HEARNE, ESQ.
HAGER & HEARNE
245 E. Liberty St., Suite 110
Reno, NV 89501
(775) 329-5800
Attorney for the Appellants

52

## **CERTIFICATE OF SERVICE**

I certify that I am an employee of HAGER & HEARNE and I hereby certify that on

today's date the OPENING BRIEF was electronically transmitted to the Clerk of the

Court using the CM/ECF System which will send notification of such filing and

transmittal of a Notice of Electronic Filing to all CM/ECF registrants. The

EXCERPTS OF RECORD, VOLUMES 1 - 6 were sent to the Clerk of the Court via

Federal Express.

   DATED this 11th day of June, 2012.

                                        */s/ Jennifer Sharp*_____
                                        JENNIFER SHARP

53