**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | No. 11-17615 |
| | D.C. No. 2:09-md-02119-JAT |
| JONATHAN E. ROBINSON; SALLY J. ROBINSON-BURKE; ROSA A. SILVAS; JOSEPHA S. LOPEZ; JOSE TRINIDAD CASAS; MARIA C. CASAS; LYNDON B. GRAVES; TYRONE EVENSON; MICHELLINA EVENSON; BRYAN GRAY, [for complete list of plaintiff/appellants, see Notice of Appeal]; PABLO LEON, *Plaintiffs-Appellants*, | OPINION |
| v. | |
| AMERICAN HOME MORTGAGE SERVICING, INC.; AMERICA'S SERVICING COMPANY; AMERICA'S WHOLESALE LENDER; AURORA LOAN SERVICES, LLC; AZTEC FORECLOSURE CORP.; BAC HOME LOANS SERVICING LP; BANK OF AMERICA, NA; BANK OF NEW YORK MELLON; CALIFORNIA RECONVEYANCE CO.; CENTRAL MORTGAGE CO.; COOPER CASTLE LAW FIRM LLP; CR TITLE SERVICES, | |

INC.; DEUTSCHE BANK; EXECUTIVE
TRUSTEE SERVICES, LLC; FEDERAL
HOME LOAN MORTGAGE
CORPORATION; FEDERAL HOUSING
FINANCE AGENCY; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION; FIDELITY NATIONAL
TITLE INSURANCE CO.; FIRST
AMERICAN LOAN STAR TRUSTEE
SERVICES, LLC; FIRST HORIZON
HOME LOAN CORP.; G.E. MONEY
BANK; GMAC MORTGAGE, LLC;
HOUSEKEY FINANCIAL CORP.; HSBC
MORTGAGE CORPORATION, USA;
HSBC MORTGAGE SERVICES, INC.;
HSBC BANK, U.S.A., N.A.; IB
PROPERTY HOLDINGS; JPMORGAN
CHASE BANK; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; MERSCORP, INC.;
MORTGAGE IT, INC.; MTC
FINANCIAL, INC., DBA Trustee
Corps.; NATIONAL CITY MORTGAGE;
PNC FINANCIAL SERVICES GROUP,
INC.; NATIONAL DEFAULT
SERVICING CORP.; NDEX WEST
LLC; OLD REPUBLIC NATIONAL
TITLE INSURANCE CO.; QUALITY
LOAN SERVICE CORPORATION;
RECONTRUST COMPANY; SAXON
MORTGAGE, INC.; T.D. SERVICE
COMPANY; UTLS DEFAULT
SERVICES, LLC; WELLS FARGO

BANK, NA; WESTERN PROGRESSIVE
TRUSTEE, LLC; CITYMORTGAGE,
INC.; LIME FINANCIAL SERVICES
LIMITED,

*Defendants - Appellees*.

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted
November 7, 2013—San Francisco, California

Filed June 12, 2014

Before: A. Wallace Tashima, William A. Fletcher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Multidistrict Litigation / Property Law

Addressing multidistrict litigation raising claims related to the formation and operation of the MERS System, a private electronic database that records the ownership of and servicing rights in home loans, the panel dismissed an appeal from an order of the Judicial Panel on Multidistrict Litigation and affirmed in part and reversed in part the Multidistrict Litigation Court's dismissal of the plaintiffs' consolidated amended complaint.

The panel also ordered stayed a portion of the appeal in light of a defendant's bankruptcy proceedings.

The plaintiffs were borrowers who resided in Arizona, California, Nevada, Oregon, and South Carolina, and whose notes and deeds of trust were processed through the MERS System. The defendants were various financial institutions that had interests in the notes and deeds of trust or had otherwise been involved in the operation of the MERS System.

The panel dismissed the plaintiffs' appeal from the JPML's order transferring cases to the MDL Court for consolidated pretrial litigation on the ground that mandamus is the exclusive mechanism for reviewing JPML orders.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the plaintiffs had waived their arguments regarding the MDL Court's orders determining which claims the JPML had remanded to transferor courts, and which it had transferred to the MDL Court.

The panel held that the MDL Court did not convert the defendants' motion to dismiss into a motion for summary judgment.

The panel reversed the district court's dismissal of Count I, seeking relief based on violations of Arizona's false documents statute when the defendants allegedly filed false notices of trustee sale, notices of substitution of trustee, and assignments of deed of trust. The plaintiffs alleged that these documents were notarized in blank and "robosigned" with forged signatures.

The panel affirmed the dismissal of Count II, alleging that the defendants had committed, or would commit, the tort of wrongful foreclosure, in violation of Arizona, California, and Nevada law, because the MERS System impermissibly "splits" ownership of the note from ownership of the deed of trust, thereby making the promissory note unsecured and unenforceable in any foreclosure proceeding. The panel held that these claims failed because none of the plaintiffs alleged lack of default, tender to cure the default, or an excuse from tendering.

The panel affirmed the dismissal of Count III, alleging that nonjudicial foreclosures conducted under Nev. Rev. Stat. § 107.080 were improper.

The panel affirmed the dismissal of Count V, alleging aiding and abetting wrongful foreclosure under Arizona, California, and Nevada law.

The panel affirmed the dismissal of Count VI, alleging aiding and abetting predatory lending under Arizona, California, and Nevada law, on the basis that claims concerning loan origination practices had been remanded to the transferor courts by the JPML.

The panel affirmed the district court's denial of leave to amend the complaint.

## COUNSEL

Robert Hager and Treva Hearne (argued), Hager & Hearne, Reno, Nevada; William A. Nebeker, Valerie R. Edwards (argued), and Lisa Irene Streu, Koeller Nebeker Carlson & Haluck, LLP, Phoenix, Arizona; and Sheryl Serreze, Reno Law Group, LLC, Reno, Nevada, for Plaintiffs-Appellants.

Andrew Martin Jacobs, Snell & Wilmer, LLP, Tucson, Arizona; Andrew R. Louis, Buckley Sandler, LLP, Washington, D.C.; Cynthia Lynn Alexander and Kelly Harrison Dove, Snell & Wilmer, LLP, Las Vegas, Nevada; Patrick G. Byrne, Gregory J. Marshall, Barbara Dawson, Snell & Wilmer, LLP, Phoeniz, Arizona; Michael R. Pennington, Bradley Arant Boult Cummings, LLP, Birmingham, Alabama; Matthew P. Previn, Buckley Sandler LLP, New York, New York; Henry Faulkner Reichner and Ira S. Lefton, Reed Smith LLP, Philadelphia, Pennsylvania; Thomas Hefferon (argued) and Joseph Yenouskas, Goodwin Proctor LLP, Washington, D.C.; Gary Edward Schnitzer,

Kravitz, Schnitzer, Sloane and Johnson, Las Vegas, Nevada;
Gregory B. Iannelli, Bryan Cave, LLP, Phoenix, Arizona;
Thomas Justin Cunningham, Hugh Balsam, J. Matthew
Goodin, Phillip Russell Perdew, Locke Lord, LLP, Chicago,
Illinois; Justin Donald Balser, Akerman Senterfitt, Denver,
Colorado; Kristin Schuler-Hintz, McCarthy & Holthus, LLP,
Las Vegas, Nevada; Paul M. Levine, Matthew A. Silverman,
McCarthy, Holthus & Levine, LLP, Scottsdale, Arizona;
Robert W. Norman, Houser & Allison, APC, Irvine,
California; Ariel Edward Stern, Akerman, LLP, Las Vegas,
Nevada; Jonathan D. Fink, Wright, Finlay & Zak, Newport
Beach, California; Christopher Jorgensen, Lewis Roca
Rothgerber, LLP, Las Vegas, Nevada; Ann Martha Andrews,
Lewis Roca Rothgerber, LLP, Phoenix, Arizona; Stefan M.
Palys, Stinson Morrison Hecker, LLP, Phoenix, Arizona;
David Ray Hall, Parsons Behle & Latimer, Salt Lake City,
Utah; LeAnn Pedersen Pope, Danielle Jean Szukala, Burke,
Warren, Mackay & Serritella, PC, Chicago, Illinois; Jennifer
Reiter, Maynard Cronin Erickson Curran & Sparks, PLC,
Phoenix, Arizona; Kent F. Larsen, Joseph T. Prete, Smith
Larsen & Wixom, Las Vegas, Nevada;  Laurel I. Handley,
Pite Duncan, LLP, San Diego, California; David Winthrop
Cowles, William Morris Fischbach, III, Leonard McDonald,
Jr., Tiffany & Bosco, PA, Phoenix, Arizona; Kevin Hahn,
Malcolm & Cisneros, Irvine, California;  Aaron Michael
Waite, The Cooper Castle Law Firm, LLP, Las Vegas,
Nevada;  Lucia Nale, Thomas V. Panoff, Mayer Brown, LLP,
Chicago, Illinois; Lauren Elliott Stine, Quarles & Brady,
LLP, Phoenix, Arizona; Karen Ann Braje, Dennis Peter Maio,
Reed Smith, LLP, San Francisco, California;  Michael Q.
Eagan, Jr., Elizabeth Allen Frohlich, Morgan Lewis &
Bockius, LLP, San Francisco, California; Lorenzo Emilio
Gasparetti, Reed Smith, LLP, Los Angeles, California;  Ira S.
Lefton,  Reed  Smith,  LLP,  Philadelphia,  Pennsylvania;

Gregory Wendell Falls, Sherman & Howard, LLC, Phoenix, Arizona; Mark S. Landman, Landman Corsi Ballaine & Ford PC, New York, New York; Howard Lindenberg, Federal Home Loan Mortgage, McLean, Virginia; Jill L. Nicholson, Jonathan William Garlough, Joanne Lee, Foley & Lardner, LLP, Chicago, Illinois; Howard N. Cayne, David Fauvre, Arnold & Porter, LLP, Washington, D.C.; Steven Edward Guinn, Laxalt & Normura, Ltd., Reno, Nevada; James R. Condo, Snell & Wilmer, LLP, Phoenix, Arizona; Christina Wang (argued), Fidelity National Law Group, Henderson, Nevada; Neil Ackerman, Neil Ackerman, LLP, Las Vegas, Nevada; Keith Beauchamp, Roopali H. Desai, Coppersmith Schermer & Brockelman, PLC, Phoenix, Arizona; Benjamin B. Klubes, Buckler Sandler, LLP, Washington, D.C.; Robert Bruce Allensworth, Gregory N. Blase, Brian M. Forbes, K&L Gates, LLP, Boston, Massachusetts;   Rachel E. Donn, Marilyn Fine, Meier & Fine, LLC, Las Vegas, Nevada; Peter E. Dunkley, Wolfe & Wyman, LLP, Las Vegas, Nevada; Gregory L. Wilde, Tiffany & Bosco, PA, Las Vegas, Nevada; Douglas Erickson, Maynard Cronin Erickson Curran & Sparks, PLC, Phoenix, Arizona; Robert M. Brochin (argued) and Benjamin Weinberg, Morgan Lewis & Bockius, LLP, Miami, Florida; Brian J. Schulman, Laura Sixkiller, Greenberg Traurig, LLP, Phoenix, Arizona; Richard Joseph Reynolds (argued), Burke Williams & Sorensen, LLP, Santa Ana, California; William F. Hyder, William F. Hyder, PC, Phoenix, Arizona; David H. Pittinsky, Ballard Spahr, LLP, Philadelphia, Pennsylvania; Abran Vigil, Ballard Spahr, LLP, Las Vegas, Nevada; Adam Kyle Bult, Brownstein Hyatt Farber Schreck, LLP, Las Vegas, Nevada; Edward A. Treder, Barrett Daffin Frappier Treder & Weiss, LLP, Diamond Bar, California; Ann Martha Andrews, Lewis Roca Rothgerber, LLP, Phoenix, Arizona; Barbara Dawson, Snell & Wilmer, LLP, Phoenix, Arizona; Kelly Harrison Dove, Snell &

Wilmer, LLP, Las Vegas, Nevada; Randall W. Edwards, O'Melveny & Myers, LLP, San Francisco, California; Elizabeth Lemond McKeen, O'Melveny & Myers, LLP, Newport Beach, California, for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Mortgage Electronic Registration Systems, Inc. ("MERS"), a subsidiary of MERSCORP, Inc., operates an electronic mortgage registration system ("the MERS System"). MERS is distinct from the MERS System. The MERS System is a private electronic database that records the ownership of and servicing rights in home loans. Various financial institutions are members of the MERS System. We described the operation of the System in our recent decision in *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). We have before us an appeal from an order of the district court dismissing plaintiffs' claims related to the formation and operation of the MERS System. We dismiss in part, affirm in part, and reverse in part.

### I. Background

Under the MERS System, the lender owns the home loan borrower's (or mortgagor's) promissory note. MERS, as the "nominee" of the lender and of any assignee of the lender, is designated in the deed of trust (or mortgage) as the "beneficiary" (or mortgagee) under the deed of trust. (For convenience, we will use the terms "borrower," "deed of trust," and "beneficiary," rather than "mortgagor,"

"mortgage," and "mortgagee.") MERS rather than the lender or lender's assignee is recorded as the beneficiary under the deed of trust in the recording system of the county where the property is located.

Use of the MERS System typically begins when a borrower from a MERS member signs a promissory note and a deed of trust. The MERS member takes possession of the note, and MERS is recorded as the beneficiary under the deed of trust. The note is almost always assigned to others, often several times over. If the note is assigned to a MERS member, MERS remains the beneficiary under the deed of trust. MERS contends that there is no need to record the assignment of the note so long as the assignee is a MERS member. However, when an assignment is made to a nonmember of MERS, the identity of the assignee is recorded. About half of the residential mortgages in the United States are now recorded with MERS named as the beneficiary under the deed of trust. *See Robo-signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before the Subcomm. on Hous. and Cmty. Opportunity of the H. Comm. on Fin. Servs.*, 111th Cong. 101 (2010) (statement of R.K. Arnold, President and CEO, MERSCORP, Inc.); *see also* Jesse Hamilton, *U.S. Regulators Examining Departures at Mortgage Registry*, Bloomberg (Apr. 15, 2014, 9:01 PM), http://www.bloomberg.com/news/2014-04-16/u-s-regulators-examining-departures-at-mortgage-registry.html.

The MERS System has been sharply criticized. *See, e.g.*, Tanya Marsh, *Foreclosures and the Failure of the American Land Title Recording System*, 111 Colum. L. Rev. Sidebar 19, 23–24 (2011) (noting that MERS has been a "controversial innovation" and highlighting that the System's "inherent

opaqueness" may conceal "shoddy record keeping practices"); Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1374, 1407 (2010) (outlining MERS's "[q]uestionable" legal foundations and arguing that "[t]he shift away from recording loans in the name of actual mortgagees and assignees represents an important policy change that erodes not only the tax base of local governments, but also the usefulness of the public land title information infrastructure"); Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 120, 125–27 (2011) (criticizing the "incoherence of MERS's legal position" regarding MERS's status with respect to mortgages registered in the MERS System, which is "exacerbated by a corporate structure that is so unorthodox as to be considered arguably fraudulent," and criticizing the unreliability of the MERS database); David P. Weber, *The Magic of the Mortgage Electronic Registration System: It Is and It Isn't*, 85 Am. Bankr. L.J. 239, 239–40, 264 (2011) (describing MERS's "imperfect implementation and lack of transparency"); *see also* Michael Powell & Gretchen Morgenson, *MERS?  It May Have Swallowed Your Loan*, N.Y. Times, March 6, 2011, http://www.nytimes.com/2011/03/06/business/06mers.html (describing the "mounting" legal challenges facing MERS).

The obvious advantage of the MERS System is that it allows residential lenders to avoid the bother and expense of recording every change of ownership of promissory notes. *See, e.g.*, Phyllis K. Slesinger & Daniel McLaughlin, *Mortgage Electronic Registration System*, 31 Idaho L. Rev. 805, 808 (1995); *About Us*, MERS, http://www.mersinc.org/about-us/about-us (last visited May 5, 2014) (stating that

MERS was "created by the mortgage banking industry to streamline the mortgage process")*.* Critics have pointed out, however, that this advantage accrues almost exclusively to financial institutions, and that the MERS System has a number of disadvantages: It has substantially undermined what had been a comprehensive, stable, and relatively reliable public system of recording interests in residential real estate. Ownership of notes for residential loans that are processed through the MERS System is now recorded in the System's electronic database, but that information is not available to the general public. It is impossible to determine from an inspection of county records who is the actual owner of any note secured by a deed of trust for which MERS is named as the beneficiary. The familiar county-by-county public recording system has thus been replaced, in significant part, by a largely invisible and not always reliable system of voluntary record-keeping by MERS members. *See, e.g.*, Alan M. White, *Losing the Paper – Mortgage Assignments, Note Transfers, and Consumer Protection*, 24 Loy. Consumer L. Rev. 468, 502–04 (2012). Further, because the identities of the actual owners of the notes and beneficiaries of the deeds of trust are not public knowledge, renegotiation of mortgage loans processed through the MERS System is very difficult, often impossible. The MERS System has also facilitated the bundling of promissory notes into investment pools, and the sale of interests in those pools to downstream investors. Before the mortgage loan crisis in 2008, the bundling of notes and sale of interests to investors greatly encouraged the flow of money into the overheated residential mortgage market.

Some states have enacted legislation to mitigate the difficulties created by the widespread use of the MERS System. Many of these statutes seek to increase transparency in the foreclosure process by requiring that foreclosure

notices provide more information to the homeowner about the parties involved in the foreclosure proceedings. *See generally* John Rao et al., Nat'l Consumer Law Ctr., Foreclosures 146–47 & n.349 (3d ed. 2010) (compiling laws in California, Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, and North Carolina). California, under whose law a number of claims in this case arise, has recently enacted the Homeowner Bill of Rights. Among other things, the new California statute seeks to ensure that "borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options," including by streamlining communication between the distressed borrower and foreclosing party. *See* Assemb. B. 278, 2011–2012 Leg., Reg. Sess. (Cal. 2012); S.B. 900, 2011–2012 Leg., Reg. Sess. (Cal. 2012).

There has been a wave of litigation in state and federal courts challenging various aspects of the MERS System. Almost all of the relevant law is state rather than federal. The results under state law have been inconsistent. *See* Weber, *supra*, at 246–56 (cataloguing the "schizophrenic position of state courts" on issues relating to the MERS System). Some state supreme courts have upheld the MERS System on issues ranging from foreclosure authority to recording requirements. *See, e.g.*, *Renshaw v. Mortg. Elec. Registration Sys., Inc.*, 315 P.3d 844, 846–47 (Idaho 2013) (holding that MERS may be a beneficiary as nominee for the lender, that assignments of the deed of trust between MERS members need not be recorded, that MERS was not liable to the borrower in negligence, and that the Idaho Consumer Protection Act did not provide a cause of action to the borrower); *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 501 (Minn. 2009) (holding that Minnesota law does not require

recording of assignments of promissory notes among MERS members); *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 252 (Nev. 2012) (stating that, although a split note and deed are not enforceable, under Nevada law "any split is cured when the promissory note and the deed of trust are reunified"); *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1081, 1083–89 (R.I. 2013) (holding that MERS had the contractual authority to invoke the power of sale and the right to foreclose and that Rhode Island law did not preclude foreclosure where the noteholder and the mortgagee were not the same entity).

Other state supreme courts have reached essentially opposite conclusions. *See, e.g.*, *Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 301 S.W.3d 1, 4 (Ark. 2009) (holding that, because MERS receives no payments on the debt, it is not the beneficiary, even though it is so designated in the deed of trust); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166–67 (Kan. 2009) ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable."); *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2 A.3d 289, 297 (Me. 2010) (holding that MERS lacked standing to foreclose as the lender's nominee); *CPT Asset Backed Certificates, Series 2004-EC1 v. Cin Kham*, 278 P.3d 586, 592–93 (Okla. 2012) (holding that the putative noteholder lacked standing to foreclose because MERS lacked authority to assign the note, though it arguably had authority to assign the mortgage); *Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 304–05 (Or. 2013) (en banc) (holding that MERS was not the "beneficiary" of a deed of trust under the Oregon Trust Deed Act absent conveyance to MERS of the beneficial right to repayment, and that MERS

could not hold or transfer legal title to the deed as the lender's nominee); *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34 (Wash. 2012) (en banc) (holding that "MERS is an ineligible '"beneficiary" within the terms of the Washington Deed of Trust Act' if it never held the promissory note or other debt instrument secured by the deed of trust," and that "characterizing MERS as the beneficiary has the capacity to deceive" and may give rise to an action under the Consumer Protection Act); *see also MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 88–89 (N.Y. 2006) (Kaye, C.J., dissenting in part) (identifying concerns with the MERS system and "at least a disparity between the relevant statute . . . and the burgeoning modern-day electronic mortgage industry").

Federal courts, applying state law, have reached similarly disparate results. *Compare, e.g.*, *Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 904 F. Supp. 2d 436, 441 (E.D. Pa. 2012) (applying Pennsylvania law and holding that the County's allegations that MERS violated recording statutes by failing to record assignments stated a claim for relief), *In re Thomas*, 447 B.R. 402, 412 (Bankr. D. Mass. 2011) (applying Massachusetts law and holding that "[w]hile the assignment purports to assign both the mortgage and the note, MERS . . . was never the holder of the note, and therefore lacked the right to assign it. . . . MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record"), *and In re Wilhelm*, 407 B.R. 392, 404 (Bankr. D. Idaho 2009) (applying Idaho law and holding that MERS is not authorized "either expressly or by implication" to transfer notes as the "nominal beneficiary" of the lender), *with Town of Johnston v. MERSCORP, Inc.*, 950 F. Supp. 2d 379, 384 (D.R.I. 2013) (holding Rhode Island law does not require recording of assignments among MERS members); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d

616, 623 (N.D. Tex. 2011) (granting summary judgment to defendants on plaintiffs' claims that assignments by MERS were invalid and rendered foreclosure defective), *and Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1344–45 (N.D. Ga. 2013) (applying Georgia law and holding that, even assuming the plaintiff had standing to challenge the foreclosure on the theory that MERS assignments were invalid, that theory did not provide a basis for a wrongful foreclosure claim).

A number of federal lawsuits challenging the formation and operation of the MERS System were consolidated by the Judicial Panel on Multidistrict Litigation ("the JPML") and transferred in part to a Multidistrict Litigation Court ("the MDL Court") in the District of Arizona. The JPML remanded to the respective transferor courts "claims unrelated to the formation and/or operation of the MERS system." Judge Teilborg of the MDL Court issued a series of orders determining which claims had been transferred to the MDL Court, and which had been remanded to the transferor courts. In an early order on the merits, the MDL Court dismissed several of the transferred actions. We affirmed that dismissal in *Cervantes*. 656 F.3d 1034.

Plaintiffs in the remaining actions before the MDL Court filed a single Consolidated Amended Complaint ("CAC"). Plaintiffs are borrowers who reside in Arizona, California, Nevada, Oregon, and South Carolina, and whose notes and deeds of trust were processed through the MERS System. Defendants are various financial institutions who have, or have had, interests in the notes and deeds of trust, or who have otherwise been involved in the operation of the MERS System. The MDL Court dismissed the CAC with prejudice, and plaintiffs timely appealed.

For the reasons that follow, we dismiss in part, affirm in part, and reverse in part.

## II.  Standard of Review

We review orders of the JPML only by writ of mandamus.  28 U.S.C. § 1407(e); *see id.* § 1651(a).  We review de novo the district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc).  The district court's denial of leave to amend is reviewed for abuse of discretion.  *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1105 (9th Cir. 2012).

## III.  Discussion

### A.  JPML Order

Appellants contend on appeal that the JPML erred in transferring the cases to the MDL Court for consolidated pretrial litigation.  Mandamus is the exclusive mechanism for reviewing JPML orders.  28 U.S.C. § 1407(e); *see In re Wilson*, 451 F.3d 161, 168 (3d Cir. 2006); *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litig.*, 73 F.3d 528, 534 (4th Cir. 1996).  Appellants have not sought a writ of mandamus, and we dismiss for lack of jurisdiction their appeal of the JPML Order.

### B. MDL Court Remand Orders

Appellants contend that the MDL Court erred in determining which claims were remanded to the transferor courts under the JPML Order.  They argue that the MDL Court exceeded its authority in deciding which claims were

remanded. They also argue that the MDL Court was inconsistent in determining which claims were remanded to the transferor courts under the JPML Order. They made neither argument to the MDL Court.

Generally, arguments not raised in the district court will not be considered for the first time on appeal. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 452 (4th Cir. 2005) (holding that plaintiffs had waived the issue of remand by failing to raise it with the JPML or the district court). We see no reason to depart from our general practice here. We hold that appellants have waived their arguments regarding the MDL Court's remand orders.

### C. Summary Judgment

Appellants contend that the MDL Court improperly converted defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. We disagree.

The Federal Rules provide for sua sponte conversion of a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment "if . . . matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The district court must notify the parties before taking such action, in order to provide to the parties a fair opportunity to present material relevant to summary judgment. *Id.*; *Garaux v. Pulley*, 739 F.2d 437, 438–39 (9th Cir. 1984).

Nothing in the record suggests that the MDL Court considered extraneous materials in ruling on defendants' motion to dismiss under Rule 12(b)(6). The record makes

clear that the MDL Court dismissed the CAC based only on the deficiencies in the CAC.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (explaining that Rule 12(b)(6) provides for dismissal where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

### D.  Dismissal of the Complaint

The MDL Court dismissed with prejudice all claims in the CAC.  The CAC is long and somewhat diffuse, not always making clear the state whose law is at issue.  Further, appellants' brief on appeal does not specify with complete clarity which claims in the CAC they contend were improperly dismissed.  As best we can determine, appellants appeal the dismissals of Count I (violation of Ariz. Rev. Stat. § 33-420 (false documents)); Count II (wrongful foreclosure under Arizona, California, and Nevada law); Count III (violation of Nev. Rev. Stat. § 107.080 (nonjudicial foreclosure)); Count V (aiding and abetting wrongful foreclosure under Arizona, California, and Nevada law); and Count VI (aiding and abetting predatory lending under Arizona, California, and Nevada law).  Some of these claims were brought against fewer than all of the defendants.  Claims brought under Oregon law were withdrawn in the MDL Court, and claims brought under South Carolina law were not raised in appellants' opening brief.  The appeal from the dismissal of claims brought against defendant-appellee Cal-Western Reconveyance Corporation has been automatically stayed, under a separate order, because of the pendency of Cal-Western's bankruptcy proceeding.

### 1. Count I: Ariz. Rev. Stat. § 33-420

The CAC seeks damages and declaratory relief based on alleged violations of Arizona's false documents statute, Ariz. Rev. Stat. § 33-420. The statute provides in relevant part:

> A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner . . . of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

> B. The owner or beneficial title holder of the real property may bring an action pursuant to this section . . . as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. . . .

. . . .

D. A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid.

The CAC alleges that defendants filed false notices of trustee sale, notices of substitution of trustee, and assignments of deed of trust. The CAC alleges that these documents were notarized in blank and "robosigned" with forged signatures. Appellants seek damages and declaratory relief against clouding of their title based on these allegedly forged documents.

Writing in 2011, the MDL Court dismissed Count I on four grounds. None of these grounds provides an appropriate basis for dismissal. We recognize that at the time of its decision, the MDL Court had plausible arguments under Arizona law in support of three of these grounds. But decisions by Arizona courts after 2011 have made clear that the MDL Court was incorrect in relying on them.

First, the MDL Court concluded that § 33-420 does not apply to the specific documents that the CAC alleges to be false. However, in *Stauffer v. U.S. Bank National Ass'n*, 308 P.3d 1173, 1175 (Ariz. Ct. App. 2013), the Arizona Court of Appeals held that a § 33-420(A) damages claim is available in a case in which plaintiffs alleged as false documents "a Notice of Trustee Sale, a Notice of Substitution of Trustee, and an Assignment of a Deed of Trust." These are precisely the documents that the CAC alleges to be false.

Second, the MDL Court held that appellants' claims under § 33-420 are time-barred. However, in *Sitton v. Deutsche Bank National Trust Co.*, 311 P.3d 237, 241 (Ariz. Ct. App. 2013), the Arizona Court of Appeals held that damages claims under § 33-420(A) are subject to a four-year statute of limitations. The allegedly false documents upon which the CAC relies date from no earlier than February 15, 2008. Appellants' complaint was filed within the four-year statute of limitations for even the earliest purported false document. The Arizona courts have not made a comparably definitive pronouncement as to the limitations period for claims brought under § 33-420(B), whether brought as separate claims or joined to damages claims. But at least one case has suggested that a § 33-420(B) claim asserts a continuous wrong that is not subject to any statute of limitations as long as the cloud to title remains. *State v. Mabery Ranch, Co.*, 165 P.3d 211, 227 (Ariz. Ct. App. 2007).

Third, the MDL Court held that appellants lacked standing to sue under § 33-420 on the ground that, even if the documents were false, appellants were still obligated to repay their loans. In the view of the MDL Court, because appellants were in default they suffered no concrete and particularized injury. However, on virtually identical allegations, the Arizona Court of Appeals held to the contrary in *Stauffer*. The plaintiffs in *Stauffer* were defaulting residential homeowners who brought suit for damages under § 33-420(A) and to clear title under § 33-420(B). One of the grounds on which the documents were alleged to be false was that "the same person executed the Notice of Trustee Sale and the Notice of Breach, but because the signatures did not look the same, the signature of the Notice of Trustee Sale was possibly forged." *Stauffer*, 308 P.3d at 1175 n.2. The trial court dismissed on the pleadings. The Arizona Court of

Appeals reversed the dismissal under both §§ 33-420(A) and (B). It wrote:

> Appellees argue that the Stauffers do not have standing because the Recorded Documents have not caused them any injury, they have not disputed their own default, and the Property has not been sold pursuant to the Recorded Documents. The purpose of A.R.S. § 33-420 is to "protect property owners from actions clouding title to their property." We find that the recording of false or fraudulent documents that assert an interest in a property may cloud the property's title; in this case, the Stauffers, as owners of the Property, have alleged that they have suffered a distinct and palpable injury as a result of those clouds on their Property's title.

*Id.* at 1179 (citation omitted).

The Court of Appeals not only held that the Stauffers had standing based on their "distinct and palpable injury." It also held that they had stated claims under §§ 33-420(A) and (B). The court held that because the "Recorded Documents assert[ed] an interest in the Property," the trial court had improperly dismissed the Stauffers' damages claim under § 33-420(A). *Id.* at 1178. It then held that because the Stauffers had properly brought an action for damages under § 33-420(A), they could join an action to clear title of the allegedly false documents under § 33-420(B). The court wrote:

> The third sentence in subsection B states that an owner "may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section." A.R.S. § 33-420.B. Therefore, we find that an action to clear title of a false or fraudulent document that asserts an interest in real property may be joined with an action for damages under § 33-420.A.

*Id.* We therefore conclude, based on *Stauffer*, that appellants have standing to sue.

Fourth, the MDL Court held that appellants had not pleaded their robosigning claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 8(a). We disagree. Section 33-420 characterizes as false, and therefore actionable, a document that is "*forged*, groundless, contains a material misstatement or false claim or is otherwise invalid." Ariz. Rev. Stat. §§ 33-420(A), (B) (emphasis added). The CAC alleges that the documents at issue are invalid because they are "robosigned (forged)." The CAC specifically identifies numerous allegedly forged documents. For example, the CAC alleges that notice of the trustee's sale of the property of Thomas and Laurie Bilyea was "notarized in blank prior to being signed on behalf of Michael A. Bosco, and the party that is represented to have signed the document, Michael A. Bosco, did not sign the document, and the party that did sign the document had no personal knowledge of any of the facts set forth in the notice." Further, the CAC alleges that the document substituting a trustee under the deed of trust for the property of Nicholas DeBaggis "was notarized in blank prior to being signed on behalf of U.S. Bank National Association, and the party that is represented to have signed

the document, Mark S. Bosco, did not sign the document."
Still further, the CAC also alleges that Jim Montes, who
purportedly signed the substitution of trustee for the property
of Milan Stejic had, on the same day, "signed and recorded,
with differing signatures, numerous Substitutions of Trustee
in the Maricopa County Recorder's Office . . . . Many of the
signatures appear visibly different than one another." These
and similar allegations in the CAC "plausibly suggest an
entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 681
(2009), and provide the defendants fair notice as to the nature
of appellants' claims against them, *Starr v. Baca*, 652 F.3d
1202, 1216 (9th Cir. 2011).

We therefore reverse the MDL Court's dismissal of
Count I.

### 2.  Count II:  Wrongful Foreclosure

Appellants contend that defendants have committed, or
will commit, the tort of wrongful foreclosure, in violation of
Arizona, California, and Nevada law.  They argue that the
MERS System impermissibly "splits" ownership of the note
from ownership of the deed of trust, thereby making the
promissory note unsecured and unenforceable in any
foreclosure proceeding.  The MDL Court concluded that
Arizona, California, and Nevada permit "splitting" the note
from the deed of trust.

The principle that ownership of the note and the deed of
trust must be unified has a long common-law pedigree.  For
example, the Supreme Court wrote in *Carpenter v. Longan*,
83 U.S. 271 (1872), "The note and mortgage are inseparable;
the former as essential, the latter as an incident.  An
assignment of the note carries the mortgage with it, while an

assignment of the latter alone is a nullity." *Id.* at 274. However, the degree to which this principle has been preserved in the laws of Arizona, California and Nevada, and the extent of its application in particular situations, is not entirely clear. We need not address appellants' argument about "splitting" the note from the deed of trust in order to decide their claims of tortious wrongful foreclosure. The claims fail for another reason: None of the appellants has alleged lack of default, tender to cure the default, or an excuse from tendering.

Arizona, though a nonjudicial foreclosure state, has not expressly recognized the tort of wrongful foreclosure. *See Herring v. Countrywide Home Loans, Inc.*, No. CV-06-2622-PHX-PGR, 2007 WL 2051394, at *5 (D. Ariz. July 13, 2007) (noting that Arizona has neither affirmatively recognized nor denied the existence of a cause of action for wrongful foreclosure). But even if we were to assume that the tort of wrongful foreclosure exists in Arizona, one of its elements would very likely be lack of default or tender to cure the default, as is required under California and Nevada law, or an excuse from the tender requirement, as recognized by California. *Cf.* Ariz. Rev. Stat. § 33-807(A) (providing for a power of sale only after a breach or default in performance of the contract or contracts).

California law requires that, in order to bring a valid claim for tortious wrongful foreclosure, the plaintiff must allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party

attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, *the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering*.

*Lona v. Citibank, N.A.*, 134 Cal. Rptr. 3d 622, 633 (Cal. Ct. App. 2011) (collecting cases) (emphasis added). Excuses from California's tender requirement are the following:

> (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred.

*Chavez v. Indymac Mortg. Servs.*, 162 Cal. Rptr. 3d 382, 390 (Cal. Ct. App. 2013).

Nevada law requires that a trustor or mortgagor show a lack of default in order to proceed with a wrongful foreclosure claim. The Nevada Supreme Court stated in *Collins v. Union Federal Savings & Loan Ass'n*, 662 P.2d 610 (Nev. 1983):

> An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part

> which would have authorized the foreclosure
> or exercise of the power of sale. Therefore,
> the material issue of fact in a wrongful
> foreclosure claim is whether the trustor was in
> default when the power of sale was exercised.

*Id.* at 304 (citations omitted).

Because none of the appellants has shown a lack of default, tender, or an excuse from the tender requirement, appellants' wrongful foreclosure claims cannot succeed. We therefore affirm the MDL Court's dismissal of Count II.

### 3. Count III: Nev. Rev. Stat. § 107.080

Section 107.080 of the Nevada Revised Statutes specifies procedures that must be followed for nonjudicial foreclosures. A trustee sale may be set aside for lack of substantial compliance with any of the requirements of § 107.080. Nev. Rev. Stat. § 107.080(5)(a). Damages may be awarded if the foreclosing party has failed to comply with specified waiting periods or with notice and recording requirements specified in § 107.080. *Id.* § 107.080(7).

Appellants contend that the Nevada nonjudicial foreclosures, conducted under § 107.080, were improper. The CAC alleges that none of the parties issuing the notice of default or the notice of the trustee's sale was "the beneficiary, the successor in interest to the beneficiary, or the trustee appointed by the lender." The basis for their contention is that, once MERS was designated as the beneficiary under the deed of trust, the deed of trust and the note were irreparably split. The CAC states that the "specific facts" for each Nevada plaintiff are contained in Exhibit 4 to the CAC. The

key language in Exhibit 4, repeated verbatim for each Nevada plaintiff, is as follows: "Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property of the proceeds of the loan."

We disagree with appellants' contention. After the decision of the MDL Court and just before the completion of briefing in this appeal, the Nevada Supreme Court decided *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). *Edelstein* makes clear that MERS does have the authority, for purposes of § 107.080, to make valid assignments of the deed of trust to a successor beneficiary in order to reunify the deed of trust and the note. The court wrote:

> Designating MERS as the beneficiary does . . . effectively "split" the note and the deed of trust at inception because . . . an entity separate from the original note holder . . . is listed as the beneficiary (MERS). . . . However, this split at the inception of the loan is not irreparable or fatal. . . . [W]hile entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan. . . . MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified.

*Id.* at 259–60; *see also Bergenfield v. Bank of Am.*, 302 P.3d 1141 (Nev. 2013) ("Nevada law permits the severance and independent transfer of deeds of trusts and promissory notes without impairing the right to ultimately foreclose. . . . But in order to nonjudicially foreclose a deed of trust of an owner-occupied residence, the party seeking foreclosure must demonstrate that it is both 'the current beneficiary of the deed of trust and the current holder of the promissory note.' [*Edelstein*,] 286 P.3d at 255; *see* NRS 107.080.").

We therefore affirm the MDL Court's dismissal of Count III.

### 4. Count V:  Aiding and Abetting Wrongful Foreclosure Under Arizona, California, and Nevada Law

The CAC alleges that several defendants aided and abetted wrongful foreclosure.  Aiding-and-abetting liability depends on the existence of an underlying tort.  *See, e.g.*, *Wells Fargo Bank v. Ariz. Laborers Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002) (en banc).  As explained above, appellants have not stated a valid wrongful foreclosure claim under the laws of Arizona, California, or Nevada.  Their claim for aiding and abetting wrongful foreclosure therefore necessarily fails, and we affirm the MDL Court's dismissal of Count V.

### 5. Count VI: Aiding and Abetting Predatory Lending Under Arizona, California, and Nevada Law

The CAC alleges that several of the defendants aided and abetted MERS members in fraudulently inducing appellants to enter into loan agreements.  This allegation concerns loan origination practices; such claims have been remanded to the

transferor courts by the JPML. The MDL Court properly held that this count did not relate to the formation and operation of the MERS System. We therefore affirm its dismissal of Count VI.

### E. Leave to Amend

Appellants contend that they should have been given leave to amend their complaint. The MDL Court considered the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that govern assessments of whether to grant leave to amend. The MDL Court based its decision largely on the futility of amendment, along with the fact that appellants had already had the opportunity to file multiple complaints, including before the MDL Court, and that additional amendments would entail some level of prejudice to the defendants. We conclude that the MDL Court acted within its discretion in denying leave to amend and therefore affirm.

### Conclusion

We dismiss appellants' challenge to the JPML Order for lack of jurisdiction. Except for Count I, we affirm the MDL Court's dismissal of the CAC. As to Count I, we reverse and remand for further proceedings consistent with this opinion. Each side shall bear its own costs on appeal.

**DISMISSED in part, AFFIRMED in part, REVERSED in part, and REMANDED.**